REDMOND C. STEWART, ADMINISTRATOR OF GEO. W. WALTERS vs. THE UNITED ELECTRIC LIGHT AND POWER CO. ET AL..

*Action by Executor of Deceased to Recover Damages for Negligence Causing His Death—Two Actions for the Same Tort.*

Code, Art. 93, sec. 103, provides that executors and administrators shall have full power to commence and prosecute any personal action whatever which the testator or intestate might have commenced and prosecuted except actions of slander. Code, Art. 67, secs. 1 and 2, provide that whenever the death of a person shall be caused by a wrongful act the party who would have been liable in an action therefor if death had not ensued shall be liable to an action of damages to be brought in the name of the State for the benefit of the wife, husband, parent and child of the person whose death shall have been so caused, and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties for whose benefit the action is brought. *Held*, that under these statutes there are two separate and distinct causes of action arising out of the same wrongful act; that Article 67 created a new cause of action and one which the deceased never had and the damages in it are measured by the pecuniary value of his life to his family and the same are not part of the assets of his estate; that Art. 93, sec. 103, provided for the survival of a cause of action which the deceased himself had, and under it his executor or administrator is entitled to recover damages for the suffering and losses sustained by the deceased in his lifetime and the sum recovered is an asset of his estate; that neither of these actions is a substitute for the other and both may be maintained concurrently.

*Decided November 15th, 1906.*

Appeal from the Superior Court of Baltimore City.

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Herbert Baird Stimpson* and *Aubrey Pearre, Jr.*, for the appellant.

*Geo. Weems Williams* (with whom were *Wm. L. Marbury* and *Wm. L. Rawls* on the brief), for the appellee.

McSherry, C. J., delivered the opinion of the Court.

This is an appeal from the Superior Court of Baltimore City. Mr. Redmond C. Stewart, the administrator of George W. Walters deceased, brought suit against the United Electric Light and Power Company of Baltimore, and the Maryland Telephone and Telegraph Company to recover damages for injuries received by the decedent through the wrongful act, neglect and default of the defendants. It is alleged in the *narr.* that Walters was in his lifetime, a tinner and roofer by trade and that whilst engaged in work on the roof of a house in Baltimore he came in contact with a disused wire of the Telephone Company which crossed the aforesaid roof after being in touch with a charged wire of the Light and Power Company, and that by that contact he received an electric shock which threw him to the ground and seriously injured him, from which injury after suffering for several hours great pain and sickness, he died the same day. In consequence of the said acts of the defendants, "the said George W. Walters suffered severe mental and physical pain and great damage both in person and estate." One of the defendants pleaded not guilty, and the other demurred to the declaration. The demurrer was sustained and judgment was thereupon entered in favor of the defendants for costs. From that judgment this appeal has been taken.

The single question before us is: Did the cause of action, which, according to the averments of the *narr.* accrued to the deceased in his lifetime from the alleged wrongful act and negligence of the defendants abate when he died? or, did it survive so that suit upon it might be instituted and maintained by his administrator?

At the common law the right of action arising from an alleged wrongful act and negligence of the character charged in the *narr.* before us would have abated upon the death of the person thus injured. It was a principle of the common law, that if an injury were done either to the person or property of another, for which *damages* only could be recovered in satisfaction, the action died with the person *to* whom or *by* whom,

the wrong was done.   So fixed was this rule that it crystal-
lized into a maxim.    It was considerably altered, however, by
the *Statute of 4 Edw.,* 3 C. 7, *de bonis asportatis in vita testa-
toris*, which though in force in Maryland prior to the adoption
of the *Act of 1798, ch. 101* (*Kennerly's ex.* v. *Wilson*, 1 Md.
107), has no application to this case.   Where the cause of ac-
tion was founded on any *malfeasance* or *misfeasance* was a *tort,*
or arose *ex delicto*—where the *declaration* imputes a tort done
either to the person or property of another, and *the plea* must
be not guity, the rule was *actio personalis moritur cum per-
sona*.    Note 1, *Wheatley* v. *Lane*, 1 Wms. Saund. 216.    But
statutes have been adopted in Maryland as well as in many, if
not most, of the States of the Union, and fashioned after simi-
lar enactments in England, which have materially changed the
common law rule; and the question involved on this record
comes down to the inquiry as to whether the legislation of
this State has abrogated that rule as it would have applied to
this case; since if the rule has not been abrogated or modified
it will defeat the pending action.   Now, there are two distinct
lines of legislation on this subject, both of which are in force
though adopted at widely different periods of time.   The one,
beginning with the *Act of 1785, ch. 80*, has relation to the
survival of certain personal actions instituted in the lifetime of
the plaintiff but which would have abated at the common law
upon his death; the other, the *Act of 1852, ch. 299*, almost a lit-
eral transcript of LORD CAMPBELL'S Act (*9 and 10 Vic.*, ch. 93),
gives a right of action under certain conditions to designated
relatives of a deceased person, but not to his personal repre-
sentatives, when death has been caused by a wrongful act or
by negligence.   The pending action has not been brought un-
der the Act of 1852, but we shall have occasion, later on, to
allude to that statute, both, with a view to elucidate or define
the scope and meaning of the survival statutes by contrasting
their provisions with its terms and obvious purpose; and to
determine whether it be true, as insisted by the appellees, that
the Act of 1852 is the only existing legislation which author-
izes a suit to be brought for the recovery of damages caused

by a wrongful or negligent act resulting in death. A brief analysis of this legislation now becomes necessary.

There has been a gradual development and growth in the legislation on this subject in Maryland. For a period extending over a little more than a century the statutes bearing upon the question, concerned chiefly actions which had been insti-tuted during the life of the parties, and provided, among other things, that in certain enumerated instances the death of the plaintiff should not abate the suit; but in 1888 a further progressive enactment was adopted. The *Acts of 1785, ch. 80, sec. 1; 1801, ch. 74, sec. 38; 1815, ch. 149, sec. 3* (1 *Dorsey's Laws*; pp. 229, 463, 631); *1849, ch. 517, sec. 1*, were brought together, condensed and codified in *sec. 1, Art. 2 of the Code of 1860*, which reads: "No action of ejectment, waste, partition, dower, replevin, or any *personal* action, * * * shall abate by the death of either or any of the parties to such action * * * this not to apply to actions for slander or for injuries to the person." Laying aside for the moment *sub-ch. 8, sec. 5, of the Act of 1798, ch. 101*, reproduced in the *Code of 1860 in Art. 93, sec. 105*, the provisions saving from abatement certain pending actions instituted in the lifetime of the plaintiff, expressly excluded actions for slander and actions for injuries to the person. These last named actions therefore abated upon the death of the plaintiff, precisely as they would have abated at the common law. But no other personal actions abated upon the death of the plaintiff, because *sec. 1, Art. 2 of the Code of 1860*, unequivocally declared that no "personal action," *except* actions for slander and for injuries to the person should abate by the death of either or any of the parties to the suit. If the pending suit had been brought by the plaintiff's intestate and thereafter the intestate had died, the suit being "for injuries to the person," would have abated upon his death, as the law stood, upon the adoption of the Code of 1860. Owing to conditions which existed at the outbreak of the civil war, notably the arrest of citizens by military authority without legal process, the Legislature at the special session of 1861 by *ch. 44* now included in *sec. 103,*

336 STEWART vs. UNITED ELEC. L. & P. CO.

Opinion of the Court. [104

*Art. 93 of the Code of 1904,* narrowed the scope of the words "injuries to the person" contained in the exception clause of *sec. 1, Art. 2,* of the Code of 1860, and accordingly broadened the class of personal actions which would not abate by the death of the plaintiff. This class of personal actions was still further broadened by the *Act of 1888, ch. 262,* which forms *sec. 25, Art. 75* of the Code of 1888 and *sec. 26* of the same Art. in the Code of 1904. By that enactment it was provided that: "No action *hereafter* brought to recover damages for injuries to the person by *negligence* or *default* shall abate by reason of the death of the plaintiff, but the personal representaves of the deceased may be substituted as plaintiff and prosecute the suit to final judgment and satisfaction." This saved every suit to recover damages for injuries to the person *arising from negligence or default* from abating by the death of the plaintiff; but the clause added to *sec. 24, Art. 75* of the Code of 1888, by the adoption of that code, caused "actions for injuries to the person where the *defendant* dies, and actions for slander" to abate. This same clause is found in *sec. 25 of Art. 75 of the Code of 1904,* whilst the body of the section is a transcript of *sec. 1, Art. 2,* of the Code of 1860. The effect of this legislation is to prevent an action commenced in his lifetime for the recovery of damages for personal injuries caused by negligence or default, from abating by the death of the *plaintiff,* before final judgment. It is apparent, therefore, that the statutes, thus far considered, have relation only to a cause of action which the plaintiff himself had in his lifetime and upon which he had instituted suit whilst living. Hence these statutes give no new cause of action, but merely prevent a subsisting and a pending one from abating by the death of the plaintiff. That cause of action is in such instances devolved upon the executor or administrator and when ripened into a judgment becomes an asset of the decedent for the benefit of his creditors, if he has any; or for the benefit of his legatees and distributees. Whilst this legislation relates to the non-abatement of actions actually pending when the plaintiff dies, there are other statutes which concern the right of executors

and administrators to sue, and which have a direct bearing on the question here involved. The *Act of 1798, ch. 101, sub-ch. 8, sec. 5* (1 *Dorsey's Laws*, p. 390), transcribed in almost exact words in *sec. 105, Art. 93 of the Code of 1860*, provided that: "Executors and administrators shall have full power and authority to *commence* and prosecute any personal action whatever, at law, or in equity (as the case may require), which the testator or intestate might have commenced and prosecuted, *except* actions of slander, and for injuries or torts done to the person, &c." This precise language is reproduced in the Code of 1860 except the words "or torts;" but that omission did not change the scope of the provision in a case like this. If this section had remained unmodified it is manifest that the administrator in this case could not have *commenced* the pending action, because it is an action for injuries done to the person, and such actions were not within the purview of the enactment. But a very material alteration was made by the Code of 1888. By *sec. 104 of Art. 93* of that codification or *sec. 103* of the Code of 1904 it was declared: "Executors and administrators shall have full power to *commence* and prosecute *any personal action* whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted, *except actions of slander;* and they shall be liable to be sued in any Court of law or equity, in any action (except for slander and injuries to the person) which might have been maintained against the deceased," &c. Thus in 1888 for the *first* time executors and administrators were given full power to *commence* suits for the recovery of damages for personal injuries sustained by their testator or intestate in his lifetime. Full power to *commence* such suits, except for slander and except against the executor or administrator of the person who caused the injury, must, if the terms mean anything, include such a case as this. Executors and administrators may commence and prosecute *any personal action whatever* which the testator or intestate might have commenced, except actions of slander. Now the intestate could have brought a suit in his lifetime for the injuries sustained by him as set forth in the

*narr.* And as this is not a suit for slander, nor a suit against the executor or administrator of a deceased defendant, why cannot his administrator *commence* and prosecute the same action? It surely needs no discussion to show that the pending case is clearly within the remedial provisions of the Code of 1888 and 1904; and we doubt whether a question would have been raised to the contrary, were it not for the *Act of 1852,* ch. 299, taken from LORD CAMPBELL's Act and found in the Codes of 1860, 1888 and 1904. In the last named Code it is *secs. 1 and 2, Art. 67.* The Act is a familiar one, but in order that the argument may be carried along with clearness, those portions which are relevant to this investigation will now be quoted. We read in *sec. 1* these words: "Whenever the death of a person shall be caused by a wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." Sec. 2: "Every *such* action shall be for the benefit of the wife, husband, parent and child of the person whose death shall have been so caused and shall be brought by and in the name of the State of Maryland for the use of the persons entitled to damages; and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death *to the parties* respectively for whom and for whose benefit such action shall be brought, and the amount so recovered * * * shall be divided among the above mentioned parties, in such shares as the jury by their verdict shall find and direct; provided that not more than one action shall lie for and in respect of the same subject-matter of complaint, &c." The points of difference between this statute and the provisions of the Code giving to executors and administrators full power to commence and prosecute any personal action whatever which the testator or intestate might

have commenced and prosecuted (except actions of slander
and an action where the person causing the injury is dead) are
striking and marked even upon a casual comparison of the
two enactments. The suits are by different persons, the dam-
ages go into different channels, and are recovered upon differ-
ent grounds, and the causes of action though growing out of
the same wrongful act or neglect, are entirely distinct. Quite
as significent as these circumstances is the further fact that
the Code of 1888 giving for the first time full power to ad-
ministrators to commence any personal action except for slan-
der, went into effect thirty-six years after the adoption here
of LORD CAMPBELL's Act in 1852; and it must be presumed
that the Legislature intended by the provision in the Code of
1888 to give a remedy for the injuries which the Act of 1852
did not cover. To say that the two enactments are merely
alternatives of each other ignores the genesis of this legisla-
tion and in effect asserts that though the Legislature distinctly
and in definite terms prescribed how and by whom the suit
should be brought under the Act of 1852 still thirty-six years
afterwards it adopted a wholly different method by which and
designated a wholly different person by whom, the suit was to
be commenced and prosecuted. The result would be either
that LORD CAMPBELL's Act—the Act of 1852—has been re-
pealed *pro tanto* by the Code of 1888—in which event all the
suits brought under it since then have been improperly insti-
tuted—or, a suit may be brought under either that Act or un-
der *sec. 103* of Art. 93 of the Code in which event a race of
diligence between the personal representative and the family
of the deceased would determine whether the damages re-
covered would go in one direction or another. Under the
Act of 1852 the suit must be brought in the name of the
State for the use of certain equitable plaintiffs who are kind-
red of the deceased. Under *sec. 103* of Art. 93 of the Code
the suit must be brought by the executor or administrator of
the deceased. Under the Act of 1852 the damages recover-
able are such as the equitable plaintiffs have sustained *by the
death* of the party injured; under *sec. 103* the damages re-

coverable are only such as the deceased sustained in his life-time and consequently exclude those which result to other persons from his death. Under the Act of 1852 the damages are apportioned by the jury among the equitable plaintiffs, and belong exclusively to them and form no part of the assets of the decedent's estate; under *sec. 103 of Art. 93* of the Code the damages recovered go into the hands of the execu-tor or administrator and constitute assets of the estate. Un-der the Act of 1852 there is no survival of a cause of action —the cause of action is created by it and is a new cause of action and consequently one which the deceased never had; under *sec. 103* there *is* a survival of a cause of action which the decedent had in his lifetime.

If, then, it be true that there are two, separate, distinct and independent causes of action arising out of the same wrongful or negligent act, then it must follow that they may be prose-cuted concurrently. We have pointed out some reasons in support of the statement that the two causes of action are sep-arate and distinct and we will in a moment turn to some of the adjudged cases on that subject. Of course if our view that these causes of action are separate and distinct be correct, there will be no need to consider at length several series of cases in other jurisdictions, because a few general suggestions, which will be made later on, will suffice to show that those cases do not apply when our statutes are being interpreted. It may be well to observe, in passing, that there is nothing in-congruous or contrary to fixed legal principles in the asser-tion that the same wrongful or negligent act may give rise to two separate causes of action, if different injuries have been in-flicted by it on different persons. It is the concurrence of the act and the injury resulting from it which constitutes the cause of action. As the same act may injure different individuals in different ways there is no reason why those different individ-uals should not have separate remedies for the recovery of the damages sustained by them respectively, even though those damages flow directly from the same cause. It is not the identity of the cause, but the identity of the cause *and* the

identity of the damages, the identity of the person who has sustained damage, which precludes two recoveries.

It is the settled law of Maryland that the Act of 1852 created a *new* cause of action. In *Tucker* v. *State, use of Johnson*, 89 Md. 479, this Court in speaking of that statute said: "By it the jury may give such damages as they may think proportioned to the injury *resulting from such death*, and not such as the injured person could have recovered if he had survived. The injury for which the equitable plaintiffs are compensated is the pecuniary loss sustained by reason of the death of the person through the wrongful act, neglect or default of the defendant. The statute, therefore, properly speaking, was not passed, as is sometimes said of it, to remove the operation of the common law maxim *actio personalis moritur cum persona*, as it has not undertaken to keep alive an action which would otherwise die with the person, but, on the contrary, has created a new cause of action for something for which the deceased person never had, and never could have had the right to sue—that is to say, the injury resulting from his death." This view is sustained by the great weight of the English cases which arose under Lord Campbell's Act—and that Act from which ours was copied preceded the adoption of ours but six years. In *Seward* v. *Vera Cruz*, L. R. 10 App. Cases 59, it was said by Lord Chancellor Selbourn: "Lord Campbell's Act gives a *new* cause of action clearly, and does not merely remove the operation of the maxim *actio personalis moritur cum persona*." And Lord Blackburn, as accurately quoted by Tiffany ("*Death by Wrongful Act*"), observed in the same case: "A totally new action is given against a person who would have been responsible to the deceased if the deceased had lived—an action which as is pointed in *Pym* v. *Great Northern Railway Company*, is new in its species, new in its quality, new in its principles, in every way new, and which can only be brought if there is any person answering the description of the widow, parent or child, who under such circumstances, suffers pecuniary loss by the death." Sec. 23. In *Legatte* v. *G. N. R. Co.* (L. R.) 1 Q. B. Div. 599, where the question

involved was: Does a recovery under LORD CAMPBELL's Act preclude a recovery for the benefit of the estate of damages to the deceased injured person. QUAIN, J., said: the two actions are entirely different things, one for the loss the estate has suffered, and the other under LORD CAMPBELL's Act which "enables an action to be brought in a case where it could not have been brought before that Act, namely, when the man has suffered a personal injury and dies in consequence. After his death, before LORD CAMPBELL's Act, no such action could have been maintained, because the death destroyed it. It fell with the life of the individual injured. Now, LORD CAMPBELL's Act gives an *entirely new action*, not an action connected with the estate of the deceased in the slightest degree, and the damages recoverable in it would be no part of the estate of the deceased. * * * I therefore feel clear upon the point that these actions are not brought in the same right, and that, therefore, the finding in one does not constitute an estoppel in the other." See also *Blake* v. *Midland Ry. Co.*, 10 Eng. L. & Eq. 437; *Pym, admr.*, v. *G. N. Ry. Co.*, 4 B. & S. 396, 116 Eng. C. L. 396. But it is supposed that there is some conflict in the English cases and *Blake* v. *Midland Ry. Co.*, *supra*, and *Read* v. *G. E. Ry. Co.*, L. R. 3 Q. B. 555, are often cited as sustaining opposite views, but they are in fact, when correctly understood, in perfect harmony. The one holds that the right of the relatives named in the statute is separate and distinct from that possessed by the decedent; the other, that the right of the relatives, is contingent upon the death of the injured person without having his claim for damages satisfied. *Brown, admr.*, v. *Chicago, &c., R. R. Co.*, 102 Wis. 137.

The damages recoverable under the Act of 1852 and those recoverable under the survival statute embodied in *sec. 103 of Art. 93* of the Code, are entirely different. In determining the measure of damages the nature of the statute under which the action is brought is to be closely observed. If the statute is merely a survival statute, the recovery is limited to such damages as might have been recovered by the deceased him-

self, had he survived the injury and brought the action.   If the statute, however, creates a new cause of action distinct from that which the deceased might have maintained, the measure of damages is the pecuniary loss sustained by the parties entitled to the benefit of the action.   In the one case, that is under the survival statute, the damages are limited to compensation for the  pain and  suffering  endured by the deceased, his loss of time and his expenses between the time of his injury and his death.   8 *Am. & Eng. Ency. L.*, 912.   In the other case, that is under the Act of 1852, the injury resulting from the death of a person is to be measured by the standard of the pecuniary value of the life of the person to the party entitled to the damages.   *Ib.*, 910; *B. & O. R. R. Co.* v. *State, use of Hauer*, 60 Md. 467.   Or, as epigramatically stated in *Needham* v. *C. T. R. Co.*, 38 Vt. 294:  "Such damages to the widow and next of kin begin where the damage of the intestate ended, viz. with his death."   The title of the Act of 1852 conclusively indicates that the damages recoverable under it are not the same as those which the deceased might have recovered.   It is "an act to compensate the *families* of persons killed  by the  wrongful act, neglect or default of another person."

If the view taken by this Court and by the English decisions, to the effect that LORD CAMPBELL's Act created a *new* cause of action, be correct—and it is too late at this day to doubt its correctness—and if it be true that the survival statute contained in *sec. 103, Art. 93 of the Code of 1904*, saves to the personal representatives of the deceased the action which *he* could have brought in his lifetime, for injuries arising from negligence or default, then it must follow necessarily that neither of those actions is the alternative of, or substitute for, the other, and consequently that both may be maintained. This conclusion, as we have already intimated, dispenses with a review of the  cases  in other jurisdictions which  hold  that though two rights of action exist, yet a satisfaction of one is a bar to the other—and it dispenses with a review of them because it is obvious if the two actions accomplish  different re

sults and stand on different bases, secure different damages and are for the benefit of wholly different persons, they can not be alternative or substitutionary, and hence the satisfaction of the one can in no way affect the other. We are not now speaking of the effect of a settlement made by the injured person in his lifetime. The cases which hold that statutes like LORD CAMPBELL'S Act apply only to instances of instantaneous death have never been followed here, because there is nothing in our Act of 1852 to warrant such an interpretation of it, and the established and unbroken practice under it has been to the contrary. Finally cases which hold that statutes similar to LORD CAMPBELL'S Act afford an exclusive remedy cannot be adopted in this State, because in an action like this—a suit by the personal representative—which is founded on a statute entirely different from the Act of 1852, the last named Act gives no remedy at all. If it gives to the personal representative no remedy, though other statutes do, it can not be said that the remedy which it does give to the family of the deceased excludes a recovery by the personal representative.

No difficulties will be encountered, we apprehend, in administering the law as we interpret it, and defendants will be exposed to no danger of injustice. The trial Judge can easily, by proper instructions, limit the recovery in a survival action to the loss actually caused to the *deceased prior* to his death; and in the action under the Act of 1852 to the pecuniary loss sustained by the surviving relatives entitled to the benefits of that provision. "A little dispassionate reflection on the subject, it would seem, would prevent unqualified condemnation of the legislative wisdom that says, if a person be wrongfully injured, the pain and suffering and expense to him in consequence thereof shall not be lost to his estate by the circumstance of his death from the injury before receiving satisfaction for his damages, even though the damages to his surviving relatives to satisfy their own grievance, may be recovered." *Brown, admr.,* v. *Chicago, &c., R. R.,* 102 Wis. 102.

Entertaining this view of the meaning of our several statutes on this subject we are constrained to hold that the Court

below committed an error in sustaining the demurrer and its judgment will be reversed with costs and a new trial will be awarded.

*Judgment reversed with costs above and below and new trial awarded.*