FANNIE P. CHAMBERS, ADMINISTRATRIX, *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 63, April Term, 1938.]

*Decided June 29th, 1938.*

204

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*C. Arthur Eby,* for the appellant.

*Morris A. Baker* and *Charles R. Posey, Jr., Assistant City Solicitors,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

A plaintiff administratrix appeals from a judgment on a verdict for the defendant directed by the court, in a suit for conscious suffering and loss by the decedent prior to death, as a result of a fall on a street or roadway in Baltimore City. *Stewart v. United Co.,* 104 Md. 332, 65 A. 49; *Davis v. Ruzicka,* 170 Md. 112, 114, 183 A. 569. Liability of the city for damages is asserted on the two alternative grounds of failure to keep a public street in repair, or, if the way was not a public one, then of negligent breaking up of the surface in use of it by the city to convey stone and gravel, in trucks, for repairing an alley extending to the rear of the houses along one side. Two rulings of the trial court are contested, that in directing the verdict for the defendant at the conclusion of the plaintiff's testimony in chief because it was legally insufficient to support a finding of liability, and a ruling on an objection to a question asked a witness.

The way, called Seneca Street, was an unpaved one, twelve or fifteen feet wide, without sidewalks, extending up a hill southerly from a public street in the Woodberry section, and providing a means of reaching houses along

the western side. On the eastern side there was a steep bank, not occupied by houses. Seneca Street had never been opened to the public generally. When first opened it had board steps at the entrance from the public street below; a turnstile was subsequently placed there; and still later, and up to the time of the repairs in the alley, posts were driven into the ground to prevent free entrance. It would appear therefore to have been maintained principally as a foot way. The dwellers along the side threw out their coal ashes and cinders to give a surface to it, and otherwise no repairs were made. To carry off rain water a rise in the road, and a stone gutter on the west side, were made by some of the dwellers. To use the way for conveying the materials for the alley the posts at the entrance were taken up; and at some time after the accident they were replaced. Meanwhile, during the repair work and subsequently, other vehicles carrying supplies to the houses also made use of it, furniture trucks, delivery trucks, coal trucks, moving trucks, and the like.

The work of repairing the alley proceeded during about six weeks prior to, and until, December 24th, 1936. There was testimony that it was done by the city, and the five-ton trucks of the city carried stone and gravel for it over Seneca Street, as stated. There was evidence, too, that before this use of the way was made the surface was good, but that the city trucks cut it up, making ruts. There was a ditch or rut two feet wide along the westerly side after the completion of the work. In front of one house, No. 3462, the house in front of which the decedent subsequently fell, a wheel of one of the city trucks sank up to its hub, and, upon request of the dweller there, the city subsequently dumped crushed stone into the hole, but not enough to fill it up. There was testimony to the existence of some lesser inequalities of surface due to rain, and some washed out gullies. It was not stated that any particular rut or hole was made by city trucks. It was not testified that the hole into which the wheel of one truck had sunk up to its hub was originated or deep-

ened by a city truck. And no reference was made to a possibility that the other trucks spoken of may have cut up the surface to some extent.

On a very dark night, of January 13th, 1937, the decedent, a lady 72 years of age, who lived in one of the upper houses, was walking up the roadway with a Mrs. Baldwin and three small children, one in Mrs. Baldwin's arms, when she fell backward and broke her hip. Mrs. Baldwin did not see the fall because the child in her arms prevented it, but she testified that it was in front of the house No. 3462, where, unknown to them, there was a hole to Mrs. Baldwin's right, and that the decedent stepped into it and was caused to fall.

As no witness saw the actual fall, and the decedent fell backwards rather than forward as if tripped, it is objected that the evidence was insufficient to prove that stepping into a hole did cause the fall. Mrs. Baldwin did not speak of making an examination of the ground under the decedent's feet to see if there was actually a hole at the spot, but did say that a hole caused the fall. It may have been that she was merely guessing, but the assertion was not tested by questioning, and, as it is not impossible, it must, on the question of legal sufficiency of the evidence, be taken at its face value. The difficulty lies in the inference of the further fact of identity of the hole as one made by city trucks. In the absence of testimony of the exact spot in front of the house mentioned, or that there was only one hole in front of it, and that city trucks made that hole, is there evidence of the requisite certainty for an adjudication that the decedent fell into a hole made by those trucks? The witnesses seem to have believed that the faulty condition must have been due to those trucks, but their actual testimony, as has been seen, fell somewhat short of stating it specifically. For all that appears, their belief may result from giving no attention to other possibilities. The conclusion of this court, concurring with that of the trial court, is that more explicit testimony of the fact would be needed to support a judicial ascertainment that the decedent's fall was due

to a hole or depression made and negligently left in the way by the city.

No evidence is found in support of the alternative complaint that the way was a public one, and that its maintenance in good condition was at the charge of the city. The facts recited show only that, except for the temporary use for repairing the alley, it was a partly closed, private street, maintained by private owners of abutting dwellings. There could, therefore, be no liability based on a neglect of the city's duty to maintain the way as a public one.

With the object of showing some repair by the city, and inferring from it an admission of responsibility for maintenance, testimony was given for the plaintiff that five days after the accident, in response to a complaint, ashes were spread over the way. Immediately following, the plaintiff asked, "What was done then?" This question was excluded. The answer appears to have been given in the statement that ashes were spread, and the plaintiff seems to have been deprived of no testimony desired. No prejudice can therefore be found, whether the particular ruling might, taken separately, be considered right or wrong.

*Judgment affirmed, with costs.*