610 A.2d 778

**Helen LOPEZ, Personal Representative of the
Estate of German H. Rodriguez et al.**

v.

**MARYLAND STATE HIGHWAY ADMINISTRATION.**

No. 12, Sept. Term, 1992.

Court of Appeals of Maryland.

Aug. 21, 1992.

David Bulitt (Wortman, Nemeroff & Bulitt, all on brief), College Park, for appellant.

Lucy A. Cardwell, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT B. BELL, JJ.

CHASANOW, Judge.

On June 3, 1988, German H. Rodriguez and Helen Lopez were riding in a car on Sligo Creek Parkway in Montgomery County. An unidentified person stood on a bridge that crossed over the parkway and hurled a 30–pound boulder onto the couple's car as they passed underneath. The boulder crashed through the windshield and killed German Rodriguez. At the time of the accident Helen Lopez was pregnant with German's child. Helen survived the assault, carried her pregnancy to full term, and over eight months later gave birth to a son, Herman Edwardo Rodriguez Lopez.

Two weeks after the boy was born, Helen filed a claim with the Maryland State Treasurer on her son's behalf for damages resulting from the death of his father.[1] For the sake of simplicity, we will refer to the infant plaintiff as Lopez. The basis of Lopez' claim is that the Maryland State Highway Administration breached its duty to operate and maintain the bridge in a safe and reasonable manner.[2] The child's claim arises under Maryland's wrongful death

---

1. Helen Lopez filed the claim as mother and next friend of Herman Edwardo Rodriguez Lopez. She filed no claim with the State Treasurer as personal representative of Rodriguez' estate.

2. The State argues on appeal that the judgment below could be affirmed on the basis that the State owed no duty to protect Rodriguez from the wrongful acts of third parties and, therefore, could not be liable for his death. This argument was not raised below as a ground for summary judgment and we will not entertain it on appeal.

statute, Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, §§ 3–901 *et seq.* In order to pursue this claim against the State, Lopez had to first comply with the provisions of the Maryland Tort Claims Act (MTCA), Md.Code (1984, 1991 Cum.Supp.), State Government Art., §§ 12–101 *et seq.*[3] When the legislature passed the MTCA and abrogated the State's sovereign immunity, it imposed certain procedural requirements that must be met in order to maintain a common law or statutory tort claim against the State. Section 12–106(b) embodies a condition precedent to such an action: "A claimant may not institute an action under this subtitle unless ... the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim."

The Lopez claim was filed with the Treasurer on March 16, 1989—16 days after his birth and 286 days after the death of his father. In a letter dated September 1, 1989, the State Treasurer denied his claim stating that she believed "that the State was not at fault" in his father's death. Approximately six months later, Lopez filed a wrongful death action in the Circuit Court for Prince George's County naming the Maryland State Highway Administration as a defendant. The State countered with a motion for summary judgment arguing that Lopez had failed to file his claim with the Treasurer within 180 days of his father's death and, therefore, he did not satisfy the § 12–106(b) condition precedent to bringing the action. Judge Joseph S. Casula felt constrained to accept the State's contention and granted its motion for summary judgment, although he recognized that this interpretation was "harsh" and acknowledged that he would be "very happy to be reversed" on appeal. Lopez appealed the grant of summary judgment and we issued a writ of certiorari before the case was argued to the Court of Special Appeals.

---

**3.** Unless otherwise indicated, all statutory references are to Maryland Code (1984, 1991 Cum.Supp.), State Government Article.

■ The parties do not dispute that a claimant must satisfy the requirement of § 12–106 as a condition precedent to pursuing a claim against the State. *See Simpson v. Moore,* 323 Md. 215, 225, 592 A.2d 1090, 1094–95 (1991). Lopez' primary argument is that the trial court erred in holding that the 180–day period in § 12–106(b) began to run at the time of his father's death. The language of § 12–106(b) states that a claim must be submitted to the Treasurer "within 180 days after the injury to person or property that is the basis of the claim...." Lopez contends that, in his wrongful death action, the "injury" for which he seeks a remedy is the loss he suffers as a fatherless child. He argues that his injury, replete with all its damages, first manifested itself on the day he was born.

In support of his argument, Lopez points out that the nature of a wrongful death action is distinguishable from a survival action. In the latter case, the decedent's estate may bring an action for the injury the decedent suffered. As such, the decedent's personal representative is essentially bringing an action that the decedent could have brought had he or she not died. *Smith v. Gray Concrete Pipe Co.,* 267 Md. 149, 158–59, 297 A.2d 721, 727 (1972), *overruled on other grounds, Owens–Illinois v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992). In a wrongful death action, however, the injury for which a plaintiff may recover is not that suffered by the decedent, but it is the loss that the plaintiff has suffered from the death of a spouse, child, or parent. *See Stewart v. United Elec. L. & P. Co.,* 104 Md. 332, 338–40, 65 A. 49, 51–52 (1906). The claimant in the instant case—Lopez as a statutory beneficiary under § 3–904 of the Courts Article—had not yet been born at the time of his father's death.

The State argued below that since the limitations period for the child's wrongful death action began to run at the time German Rodriguez died,[4] his claim to the Treasurer

---

4. The State assumes that despite the absence of a claimant the limitations period for the wrongful death action would begin at the time of

must have necessarily been filed within 180 days of that date. Yet even had Lopez filed within 180 days of his father's death, the State argues, it would have been for naught because "he was a fetus and therefore did not have a cause of action" and "was not a statutory beneficiary until the time of filing had expired."

Lopez agrees that, as a fetus, he had no cause of action for the wrongful death of his father; yet he draws a different conclusion from this fact. While agreeing that no cause of action existed at the time of Rodriguez' death, Lopez argues that he became a statutory claimant, *i.e.*, his cause of action arose, upon his birth. Most recently in *Owens–Illinois v. Armstrong*, we held that a cause of action arises " 'when facts exist to support each element.' " 326 Md. 107, 121, 604 A.2d 47, 54 (1992) (citation omitted). We went on to explain, "In a negligence claim, the fact of injury would seemingly be the last element to come into existence. The breach, duty, and causation elements naturally precede the fact of injury." *Id.* Again we look to the nature of a wrongful death action and the injury it was designed to recompense to determine when, and if, Lopez' cause of action arose.

One injury for which a plaintiff in a wrongful death action is compensated "is the pecuniary loss sustained by reason of the death" of a loved one. *Tucker v. State, Use*

---

Rodriguez' death. *See* Md.Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Art., § 3–904(g)(1) ("an action under this subtitle shall be filed within three years after the death of the injured person."). This issue is not before us and we will not venture to resolve it today.

Even accepting the State's assumption that the limitations period for Lopez' action would begin running on the day of his father's death, we do not see how this precludes Lopez' action from arising at the time of his birth. At most, Lopez would have lost from his limitations period the time he spent *en ventre sa mere* after his father's death. If, as the State argues, the limitations period necessarily began on June 3, 1988, when Rodriguez died, Lopez would still have until June 3, 1991, to file his claim. The fact that he was not born—and therefore not a statutory beneficiary—until February 28, 1989, only means that Lopez could lose from the three-year limitations that time between June 3, 1988, and February 28, 1989.

*of Johnson,* 89 Md. 471, 479, 43 A. 778, 780, 44 A. 1004 (1899). *See also Stewart,* 104 Md. at 342–43, 65 A. at 53–54. In addition to pecuniary loss, the damages recoverable by wrongful death plaintiffs are those for "mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education...." Md.Code (1974, 1989 Repl.Vol.) Cts. & Jud. Proc.Art., § 3–904(d). Certainly those damages for loss of a father's companionship, care, attention, and support could not exist until the child's birth. It was only after he was born that Lopez suffered injury from the loss of his father's pecuniary support, and the paternal affection and guidance attending the father-son relationship. Consequently, we agree with Lopez that a cause of action for the wrongful death of his father arose on the date of his birth.

Accepting that conclusion, we now focus on the language of the MTCA, as found in the State Government Article. As quoted earlier, § 12–106(b) requires that a claim be filed to the Treasurer "within 180 days after the injury to person or property that is the basis of the claim." Since the injury suffered by Lopez began on the date of his birth, the claim filed 16 days thereafter was timely and satisfied the condition precedent in § 12–106(b). Our interpretation of the latter provision is complemented and reinforced by other provisions in the MTCA subtitle. Section 12–107, which governs the form that an MTCA claim must take, requires that a "demand for specific damages" be included. To avoid speculative damage claims, we believe it is appropriate that claimants not be required to file these claims until after their birth.

More significantly, § 12–102 addresses how this Court should interpret the MTCA and directs, "This subtitle shall be construed broadly, to ensure that injured parties have a remedy." The State urges this Court to hold that Lopez not only *did not,* but *could not,* properly seek a remedy from the State for it was not possible for him to comply with the MTCA. Completely excluding the class of claimants who

are unborn at the time of the wrongful death is entirely at odds with the legislative intent that the MTCA be construed broadly so as to ensure redress to injured parties.

The parties also disagree as to the effect to be given § 3-904(h) of the Courts Article. That section provides:

"(h) *Child of parents who have not participated in a marriage ceremony.*—For the purposes of this section, a person born to parents who have not participated in a marriage ceremony with each other is considered to be the child of the mother. The person is considered to be the child of the father only if the father (1) has been judicially determined to be the father in a proceeding brought under § 5–1010 of the Family Law Article, or (2) prior to the death of the child, (a) has acknowledged himself, in writing, to be the father, or (b) has openly and notoriously recognized the person to be his child, or (c) has subsequently married the mother and has acknowledged himself, orally or in writing, to be the father."

Each party suggests a different configuration in which this requirement of establishing paternity has some bearing on when the 180–day period of § 12–106(b) begins to run. We note, however, that we do not see that the judicial determination of paternity alters the timing or impact of the loss a child will suffer at his or her birth. Regardless of whether paternity has yet been judicially established, Lopez has alleged and will have to prove that he has suffered damages as the result of the loss of his father for which the State is legally liable. Therefore, just as with a child born in wedlock, the 180–day period begins to run on the date of the child's birth.

■ In further support of this conclusion we note that a claim filed to the Treasurer need not contain proof of all elements of the action, but only a "concise statement of facts that sets forth the nature of the claim, including the date and place of the alleged tort...." § 12–107(a)(1). Lopez, therefore, did not have to establish Rodriguez' paternity before forwarding his claim to the Treasurer. Rather, Lopez must prove that he is Rodriguez' child as an addition-

al element of his cause of action under the wrongful death statute. This latter requirement embodied in § 3–904(h) of the Courts Article is comparable to that in § 3–904(b), which requires secondary beneficiaries to establish that they were "wholly dependent" on the decedent as part of their claim. *See, e.g., McKeon v. State, Use of Conrad,* 211 Md. 437, 127 A.2d 635 (1956) (determining whether sisters were "wholly dependent" was an issue for the jury). Lopez, therefore, did not have to establish his parentage before filing a claim with the Treasurer.

Within 180 days of his injury, Lopez filed his claim to the Treasurer who, in turn, denied the claim. Consequently, Lopez satisfied § 12–106(b)'s condition precedent to pursuing his cause of action in the circuit court. We, therefore, reverse the judgment of the trial court.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY THE COSTS.