872 A.2d 1

Nelly RIOS, as Parent and Next Friend
of Her Son, Luis Fernando Rios

v.

MONTGOMERY COUNTY, Maryland, et al.

No. 71, Sept. Term, 2004.

Court of Appeals of Maryland.

April 7, 2005.

106

108

110

John J. Sellinger (Brian C. Johnston, on brief), Silver Springs, for petitioners.

Karen L. Federman Henry, Principal Counsel for Appeals (Charles W. Thompson, Jr., Cty. Atty., Charles L. Frederick, Assoc. Cty. Atty., on brief), for respondents.

David M. Kopstein, Seabrook, Bruce M. Bender, Rockville, amicus curiae.

Beth Mellen Harrison, Francis D. Murnaghan, Jr. Appellate Advocacy Fellow, amici curiae.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

This case arises under the 180–day notice provision of the Local Government Tort Claims Act [hereinafter "LGTCA"], Md.Code (1987, 2002 Repl.Vol., 2004 Cum.Supp.), § 5–304 of the Courts and Judicial Proceedings Article.[1] We have been asked to determine whether the 180–day notice provision as applied to minors violates the Federal Constitution and Article

---

1. Section 5–304 provides in pertinent part:

(a) *Notice Required.* Except as provided in subsection (c) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.

&ast; &ast; &ast;

(c) *Waiver of notice requirement.* Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

Md.Code (1987, 2002 Repl.Vol.2004 Cum.Supp.), § 5–304(a) and (c) of the Courts and Judicial Proceedings Article.

19 of the Maryland Declaration of Rights. We also have been asked to review the Circuit Court's holding that the "good cause" exception contained in Section 5–304(c) of the LGTCA was not satisfied under the facts of this case. Because we find that the 180–day notice requirement of the LGTCA is constitutional as applied to minors, and that the Circuit Court did not abuse its discretion in concluding that good cause did not exist, we shall affirm.

## I. Background

Nelly Rios Saravia [hereinafter "Ms. Rios"], formerly of Bolivia, immigrated to the United States in 1983. She subsequently returned to Bolivia and later re-entered the United States in 1987 with her husband, Luis Rios [hereinafter "Mr. Rios"]. In 1991, Ms. Rios became pregnant, and a friend referred her to a clinic in Rockville operated by the Montgomery County Health Department to obtain prenatal care.

During an appointment at the clinic on June 17, 1991, Ms. Rios signed a form written in Spanish, entitled "Maternity Programa De Maternidad Pruebra De Domicilio," on which she represented that she was a resident of Montgomery County, Maryland. The words "Montgomery County Government" appeared in large letters at the top of the form with the County seal, and at the bottom of the form appeared the words "Department of Health, Division of Family Health Services" with the Department's address. The form instructed the "person requesting service" to "report all changes in ... residency (within 14 days) to the Montgomery County Health Department." Ms. Rios also signed a document called a "Face Sheet" that contained the words "Montgomery County" at the top.

In 1991, Dr. Richard Footer, M.D. was employed part-time by Montgomery County in a program called, "Project Delivery." On December 31, 1991, while Ms. Rios was in labor at Holy Cross Hospital of Silver Spring, Inc. [hereinafter "Holy Cross"], Dr. Footer was on call. Although Dr. Footer had never previously met Ms. Rios and had never provided prenatal care to her at the clinic, he delivered Mr. and Ms. Rios's

son, Luis, on that date. The only payment made by Ms. Rios for Luis's delivery was made to Holy Cross Hospital.

Luis weighed ten pounds, five ounces at birth, and his size apparently complicated the delivery. During labor, Luis's anterior shoulder became lodged, and Dr. Footer used forceps to deliver him, which resulted in a sulcar tear[2] and a fourth degree tear of the brachial plexus.[3] Luis now suffers from Erb's Palsy,[4] a permanent condition. Ms. Rios paid Holy Cross, not Montgomery County, for the costs accrued from Luis's birth.

Although Luis's injury was apparent at birth, Petitioner did not provide notice of the malpractice claim to the County until almost a decade later on April 6, 2001. On May 11, 2001, Petitioner filed a claim for negligence with the Maryland Health Claims Arbitration Office. After arbitration was waived, Ms. Rios filed a negligence suit against Dr. Footer and Montgomery County on July 24, 2002, as Luis' next friend,[5] seeking to recover for Luis's injuries.[6]

---

**2.** A "sulcus" is "a furrow, groove, or fissure." MEDICAL DICTIONARY FOR LAWYERS 652 (3d ed.1960).

**3.** A "brachial plexus" is defined as "a large network or tangle of the neck and armpit, formed by the union of the anterior branches of the lower four cervical and the first dorsal nerve." MEDICAL DICTIONARY FOR LAWYERS at 572. "Cervical" is of "[p]ertaining to the neck." *Id.* at 157. "Dorsal" is defined as "[p]ertaining to or situated near the back." *Id.* at 248.

**4.** "Erb's Palsy" is defined as "[p]aralysis of the upper roots of the brachial plexus due to destruction of the fifth and sixth cervical roots and characterized by absence of involvement of the small hand muscles." THE SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY 528 (1987).

**5.** Maryland Rule 2–202(b) provides that "[a]n individual under disability [including minority] to sue may sue by a guardian or other like fiduciary or, if none, by next friend . . ."

**6.** In the Second Amended Complaint filed on March 4, 2002, Petitioner added David Solberg, M.D. as a defendant. The complaint was amended a third time on September 9, 2002, adding Holy Cross as a defendant. Both Holy Cross and Dr. Solberg have been dismissed from the suit and are not parties to the present appeal.

Ms. Rios was deposed through a Spanish interpreter on June 6, 2002. She testified that she spoke very little English in 1991 and did not know how to read English when she went to the clinic on her initial visit. She acknowledged, however, that the "nurses spoke Spanish" and helped her to complete the forms and to communicate with the doctor. Ms. Rios estimated that she visited the clinic approximately twelve times and paid $ 8.00 per appointment, but maintained that she "did not know that it was a clinic run by the County" or that Dr. Footer was a County employee. The following deposition testimony is pertinent to the issues at bar:

[COUNSEL FOR APPELLEES]: What was your status here in the United States in 1990 and 1991?

[MS. RIOS]: I was still here illegally.

[COUNSEL FOR APPELLEES]: You indicated that a friend of yours told you to go to the clinic at 50 Monroe Street?

[MS. RIOS]: Yes.

\* \* \*

[COUNSEL FOR APPELLEES]: You indicated that she [Ms. Rios's friend] said that if you went there, they could help. What did they say they could do for you?

[MS. RIOS]: Because I was told to have a baby and to have—to give childbirth in a hospital would cost about $5,000, and I did not have those resources, sufficient resources to pay that bill, so I was told there at the clinic that they could do that for me for $1,500.

[COUNSEL FOR APPELLEES]: And this was your understanding that this clinic was a clinic that was run by Montgomery County, Maryland?

[MS. RIOS]: No. I just knew it was—I was under the impression that it was a clinic that would help people, but I didn't know anything more about it.

[COUNSEL FOR APPELLEES]: Did you know who ran the clinic?

[MS. RIOS]: No.

[COUNSEL FOR APPELLEES]: Did you know anything about the clinic other than you just go there and you get help?

[MS. RIOS]: Just that I would have to pay less, and that's why I went there.

\* \* \*

[COUNSEL FOR APPELLEES]: Was it your understanding that the clinic was not run by Montgomery County?

[MS. RIOS]: No. I did not know that it was clinic run by the County. I though it was just a public clinic, and that's why you pay the $1,500.[7]

[COUNSEL FOR APPELLEES]: So it was your understanding that it was a public clinic; is that right?

[MS. RIOS]: Yes, but one where you had to pay, but I did not know it was run by the County.

[COUNSEL FOR APPELLEES]: Did you understand that it was run by the government or a government?

[MS. RIOS]: No, I never knew that. I would go once a month for my appointments. I would just sign in, have my appointment, and go back.

[COUNSEL FOR APPELLEES]: At any point in time did you ask any of the individuals there who they worked for?

[MS. RIOS]: No, never. I never would ask anything. I would just go in and come back out.

[COUNSEL FOR APPELLEES]: After your son was born did you ever ask any of the individuals at the clinic who they worked for?

[MS. RIOS]: No, never. I never asked anybody there.

\* \* \*

[COUNSEL FOR APPELLEES]: You also understood when you signed up at the clinic that the clinic was going to

---

7. Under Montgomery County's "Project Delivery" program, qualified individuals paid $1,500.00 for a delivery as compared to $5,000.00 that it would normally cost.

provide—was going to have someone deliver your baby; correct?

[MS. RIOS]: Yes. I thought it would be the same doctor that would give me the checkups.

Ms. Rios recalled that, by six months of age, Luis still could not move his hand, and that her husband had visited a lawyer to discuss the matter before Luis was a year old; however, she had "no idea who that lawyer would be."

At his deposition, Dr. Footer stated that he learned of Luis's size "at the time of delivery," and acknowledged that he was surprised at the baby's size. He also recalled that, after the delivery he explained to Ms. Rios that "the baby had nerve damage" and required further examination. Dr. Footer stated that he told Ms. Rios "that we would have to wait and see whether this resolved totally or not." He did not, however, remember discussing with Ms. Rios the risks associated with a forceps delivery, nor did he know whether Ms. Rios was aware that he was paid by the County to deliver her son.

On September 23, 2002, Petitioner filed a "Motion to Waive Requirement of Timely Notice Under the Local Government Tort Claims Act and to Permit Action to Proceed." The motion claimed that "[p]rior to consulting with her current attorney she did not know, and had no reason to know," that Dr. Footer was paid by the County when he delivered Luis. Petitioner also asserted that the defendants would not be prejudiced if the motion were granted because Holy Cross's records regarding Luis's birth are available, and Dr. Footer and Dr. David Solberg, the obstetrical resident who participated in the delivery, "are still available to testify." At the motions hearing on January 29, 2003, Petitioner urged the Circuit Court to find good cause to justify the belated notice based upon the concept of "excusable neglect or mistake."

At the close of the motions hearing, the presiding judge, the Honorable Patrick L. Woodward, determined that even if Ms. Rios lacked actual knowledge that the clinic was a County facility and that there was a relationship between Dr. Footer and the County, she had "an affirmative duty to inquire as to

the legal identity of the Defendant." According to the Circuit Court, even a "minimum inquiry" would have led Ms. Rios to discover Dr. Footer's connection to the County. In expressing his reasoning, Judge Woodward determined that the appropriate standard to apply is that of due diligence and that Ms. Rios failed to exercise any due diligence, stating:

> The problem is that for a period of over eight and a half years, there's no evidence that [Ms. Rios] did anything to investigate or prosecute her claim. This was a situation where it was a patent injury, it was not a latent injury; she was aware of that injury, she was aware of the circumstances surrounding the occurrence of the injury. She was aware that her husband wanted to talk to a lawyer and may have talked to a lawyer about what had happened to their child. So there was clear notice to her that there was a potential legal claim against the doctors for the injuries sustained by her child. Yet there's no evidence that anything was done.

> We don't know what an investigation would have revealed ... we simply don't know that because it was never accomplished; it was never done.

The Circuit Court then considered whether Ms. Rios "was on some kind of inquiry notice about whether the doctor was an employee of the County." The court stated that it was satisfied that Ms. Rios had inquiry notice of the County's involvement. In reaching that conclusion, Judge Woodward noted:

> The clinic is run by the County, exclusively by the County, has the County logo on it, so there seems to me to be evidence here over and above the actual knowledge that would put a reasonable person on notice that somehow the County would be involved in this case, as the employer. And she went to this clinic because she couldn't afford the delivery, the regular cost of delivery; and that was another indication that the County, or some other entity was involved in the delivery.

So I think from the facts of this case, while she may not have actually known the employment status, she certainly had reasonable indication that the County was involved, and potentially responsible for what had happened in the course of the delivery.

The court then considered whether Ms. Rios established good cause for her failure to comply with the notice requirement. Concluding that she did not, the court stated:

I can't get past the fact that there simply was no evidence of investigation, no evidence of prosecution of this claim for over eight and a half years after the injury occurred. The requirement of notice is 180 days. She had an obligation under the law to make that investigation. And if that investigation had not disclosed employment, if that investigation had been reasonably conducted and there was a delay in discovery of employment status, then I think it would be a whole different picture. But that investigation simply was not done, and I think the standard for good cause requires me to find or determine where there was a prosecution of the claim with the degree of diligence of an ordinary prudent person. I think an ordinary prudent person would have done some investigation and none was done over eight and a half years, according to the evidence in the record. I simply cannot find good cause on the record in this case. And accordingly, and for these reasons and reluctantly, the Court will deny the motion to waive the requirement of timely notice.

In an order dated January 29, 2003, Judge Woodward denied the Motion to Waive Requirements of Timely Notice Under the Local Government Tort Claims Act and to Permit Action to Proceed and dismissed with prejudice Petitioner's Third Amended Complaint with respect to Montgomery County and Dr. Footer.[8] Petitioner filed a Motion for Reconsidera-

---

8. This decision to grant Montgomery County's Motion to Dismiss or for Partial Summary Judgment terminated the proceedings against Montgomery County and Dr. Footer and settled the rights of Petitioner with respect to those parties. This order is final in the traditional sense:

tion on February 28, 2003, which asked the Circuit Court to reconsider whether good cause excused the failure to comply with the timely notice requirement. Additionally, Petitioner asserted, for the first time, that the notice requirement was unconstitutional as applied to minors. The Circuit Court denied the motion on April 2, 2003, without a hearing. On May 2, 2003, Petitioner noted an appeal to the Court of Special Appeals.

Faced with similar arguments, the Court of Special Appeals affirmed the decision of the Circuit Court and held that because Ms. Rios was " 'on notice that there may have been an invasion of ... legal rights ...' by the doctor, it was incumbent upon her to 'investigate.' " It observed that the burden was on Ms. Rios to discover Dr. Footer's identity and his relationship with Montgomery County, and she did not do so. The court found particularly important the fact that Ms. Rios did not claim that Dr. Footer or the County thwarted her effort to uncover such information. Therefore, the Court of Special Appeals concluded that the Circuit Court correctly determined that Ms. Rios's failure to make any inquiry whatsoever as to the doctor's identity or employment status did not constitute good cause.

With respect to the assertion that the notice requirement of the LGTCA is unconstitutional as applied to minors, the Court of Special Appeals also found the argument to be without merit. The court held that the effect of the notice requirement on a minor whose claim arises under the LGTCA does not violate Article 19 of the Maryland Declaration of Rights because it is a reasonable restriction upon access to the courts. Moreover, the court stated that because the legislature has waived sovereign immunity in limited contexts, it also has the power to establish the conditions for such a waiver to be effective and to exempt minors from compliance with those

---

"an unqualified order granting a motion to dismiss ... thereby putting the parties out of court, is a final appealable order." *Planning Bd. Of Howard County v. Mortimer*, 310 Md. 639, 651, 530 A.2d 1237, 1243 (1987), quoting *Houghton v. County Commissioners of Kent County*, 305 Md. 407, 412, 504 A.2d 1145, 1148 (1986).

conditions. Thus, the court held that it would usurp the legislature's power to judicially create an exception not contained in the statute.

Petitioner filed a petition for writ of certiorari with this Court on July 16, 2004, presenting two issues for our consideration:

> I. Whether the Court of Special Appeals erred in finding that the 180–day notice requirement of Section 5–304(a) of the Local Government Tort Claims Act is not unconstitutional as applied to minors?

> II. Whether the Court of Special Appeals erred in affirming the Circuit Court's finding that Petitioner had not shown good cause for waiving the requirement of timely notice under Section 5–304(a) of the Local Government Tort Claims Act? [9]

On September 15, 2004, we granted the petition and issued the writ of certiorari. *Rios v. Montgomery County*, 383 Md. 211, 857 A.2d 1129 (2004). We find that the 180–day notice requirement of Section 5–304(a) of the LGTCA is constitutional under the Federal Constitution and the Maryland Declaration of Rights [10] as applied to minors where the underlying local governmental action was governmental as opposed to proprietary in nature. Moreover, we hold that the Circuit Court did not abuse its discretion in determining that Petitioner failed to show good cause for the failure to comply with the notice requirement under the LGTCA. Therefore, we affirm the Court of Special Appeals's determination that the Circuit Court properly granted Montgomery County and Dr. Footer's motion to dismiss with prejudice.

---

**9.** The issues before this Court were presented in the reverse order in the Petition for a Writ of Certiorari; however, due to the nature of the questions presented, we find it more appropriate to address the issues in the order set forth in this opinion.

**10.** Petitioner did not raise any arguments under Article 24 of the Maryland Constitution.

## II. Standard of Review

 When determining a statute's constitutionality under the Equal Protection Clause or Due Process Clause, unless a suspect or quasi-suspect class is created or a fundamental or important right is implicated, the appropriate standard of review of constitutionality is whether there is a rational basis for the created class or limited process afforded. *See Murphy v. Edmonds*, 325 Md. 342, 355–56, 601 A.2d 102, 108–09 (1992). "We have consistently followed 'the principle that a court will, whenever reasonably possible, construe and apply a statute to avoid casting serious doubt upon its constitutionality.'" *R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.*, 382 Md. 689, 718, 857 A.2d 1, 18 (2004), quoting *Becker v. State*, 363 Md. 77, 92, 767 A.2d 816, 824 (2001).

 The question of whether good cause for a waiver of a condition precedent exists is clearly within the discretion of the trial court. *Heron v. Strader*, 361 Md. 258, 270, 761 A.2d 56, 62 (2000). As we stated in *Wilson v. Crane*, 385 Md. 185, 867 A.2d 1077 (2005):

There is an abuse of discretion "where no reasonable person would take the view adopted by the [trial] court[ ]" ... or when the court acts "without reference to any guiding principles." An abuse of discretion may also be found where the ruling under consideration is "clearly against the logic and effect of facts and inferences before the court[ ]" ... or when the ruling is "violative of fact and logic."

Questions within the discretion of the trial court are "much better decided by the trial judges than by appellate courts, and the decisions of such judges should only be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred." In sum, to be reversed "[t]he decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable."

*Id.*, quoting *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312–13, 701 A.2d 110, 118–19 (1997) (citations omitted).

Thus, "an abuse of discretion should only be found in the extraordinary, exceptional, or most egregious case." *Id.*

## III. Discussion

Petitioner contends that the 180–day notice requirement of the LGTCA is an unreasonable restriction on his access to the courts in violation of Article 19 of the Maryland Declaration of Rights. He argues that although the notice requirement is not a statute of limitations, it functions as one by restricting a minor's access to the courts when notice is not given. In support of his position, Petitioner asserts that it is unreasonable to require minors to rely on their parents to provide the notice mandated by statute. Therefore, he concludes that the notice is unconstitutional under Article 19 of the Maryland Declaration of Rights.

Petitioner also argues that the notice requirement of the LGTCA violates the Equal Protection Clause and due process requirements of the Fourteenth Amendment of the United States Constitution. He asserts that the distinction between private tortfeasors and local government entities is irrational and serves no real beneficial or legitimate purpose. He also contends that the notice requirement divides the victims of local government tortfeasors into two arbitrary classes: adults and minors. Petitioner posits that such a distinction creates an unreasonable hurdle that denies minors their right to equal protection under the law. With respect to his claims of due process violations, Petitioner contends that the notice requirement denies him a vested property right without due process of law. He argues that because the LGTCA created more than a remedy, but rather a new cause of action, it follows that the cause of action is subject to due process protections.

Finally, Petitioner argues that the Circuit Court abused its discretion when it determined that a minor child must comply with the requirement of timely notice under the LGTCA. He contends that because he was only six months old when the notice period expired, he could not satisfy the notice requirement independently. Thus, Petitioner asserts that minority *per se* constitutes good cause for waiving the requirement of

timely notice under the LGTCA, because to find otherwise would assume that a legally disabled minor could have given notice or that an adult could have done so on his behalf. He argues that his status as a minor and the fact that Ms. Rios did not know, and had no reason to know, that Dr. Footer was employed by Montgomery County, establishes good cause for waiving the notice requirement under the LGTCA.

Montgomery County argues that the notice requirement of the LGTCA neither violates the Federal Constitution nor the Maryland Declaration of Rights. It notes that minors have the same access to courts as other claimants do because all claimants are required to serve notice to protect their ability to file suit. The County asserts that the notice requirement does not violate constitutional principles of equal protection or due process and does not unreasonably interfere with the access to courts protected in Article 19 of the Maryland Declaration of Rights because it is reasonable in light of the legitimate purpose of the LGTCA.

In addressing Petitioner's claim that minority should constitute good cause *per se,* the County notes that Section 5–304(b) of the Courts and Judicial Proceedings Article provides that notice may be given by the representative of the claimant as well as to the claimant himself. The County argues that the statute lacks a tolling provision for minority; as such, any consideration of minority as good cause must be made on a case-by-case basis by the trial court in its discretion, which in the present case appropriately exercised such discretion.

Furthermore, Montgomery County contends that the Circuit Court properly found that Petitioner failed to show good cause for his failure to give notice during the statutory period. The County asserts that failure to take any action during the statutorily prescribed period does not establish good cause for waiver and that mere ignorance of Dr. Footer's employment status does not constitute good cause under the LGTCA. Montgomery County opines that although Ms. Rios had the opportunity to discover such information, she did not do so, and therefore, the Circuit Court should be affirmed.

## A. The History of Local Governmental Immunity and the LGTCA

To understand the purposes and constitutionality of the notice provision of the LGTCA and the "good cause" exception, we must examine the status of local governmental immunity from the initiation of a suit, up to, and including the enactment of the LGTCA.

We had the opportunity to explicate the historical development of local governmental tort immunity in *Housing Authority v. Bennett*, 359 Md. 356, 754 A.2d 367 (2000). As we noted in that opinion, "[u]ntil the twentieth century, local governments generally had no immunity under Maryland common law in either tort or contract actions." *Id.* at 358, 754 A.2d at 368. In the early twentieth century, however, we "adopted a distinction that had been developed earlier in other jurisdictions, and held that local governments enjoyed immunity in certain types of tort actions based on activity categorized as 'governmental' but had no immunity in tort actions based on activity categorized as 'private' or 'corporate' or 'proprietary.'" *Id.* at 359, 754 A.2d at 368; *see also DiPino v. Davis*, 354 Md. 18, 47, 729 A.2d 354, 369–70 (1999) ("A local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity."). We recognized that regardless of the capacity in which the local government was functioning, it possessed no immunity for certain types of torts, such as nuisance actions, *see e.g., Board of Education of Prince George's County v. Mayor & Common Council of Town of Riverdale*, 320 Md. 384, 389–90, 578 A.2d 207, 210 (1990); tort actions arising under the Maryland Constitution, *see e.g., DiPino*, 354 Md. at 50–51, 729 A.2d at 371; and tort liability for violations of federal constitutional or statutory rights, *see e.g., Ashton v. Brown*, 339 Md. 70, 110–113, 660 A.2d 447, 467–68 (1995).

Prior to the LGTCA, the immunity of local governments afforded through the common law based on activities categorized as "governmental," was waived under specific circumstances by enactments of the General Assembly. *See e.g.,* Md.Code (1957, 1998 Repl.Vol., 2004 Cum.Supp.), Art. 44A (authorizing the creation of housing authorities and effecting a limited waiver of any governmental immunity). Also, prior to the enactment of the LGTCA, some county governments were empowered to waive any governmental immunity that they would otherwise be entitled to under the common law. *See e.g., Bradshaw v. Prince George's County,* 284 Md. 294, 297–99, 396 A.2d 255, 258–59 (1979), *overruled on other grounds by James v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980) (holding under former Md.Code (1957, 1998 Repl.Vol.), Art. 25A, § 5(S) that Prince George's County possessed the power to waive its governmental immunity through its county charter); Md.Code (1957, 1981 Repl.Vol., 1986 Cum.Supp.), Art 25A, § 5(CC) (repealed) (limiting waivers of governmental immunity to the greater of $250,000.00 or the amount of insurance coverage).[11] Thus, prior to the enactment of the LGTCA, local governments enjoyed immunity from tort liability only with respect to non-constitutional torts based on activity classified as "governmental," and such immunity could be waived by the General Assembly or local enactments. This limitation on the immunity from tort action with respect to local governments remains applicable today under the LGTCA.

In 1987, the General Assembly enacted Chapter 594 of the Acts of 1987, which repealed prior statutory provisions and replaced them with the LGTCA. 1987 Md. Laws, Chap. 594, § 1. "[T]he purpose of the LGTCA is to 'provide a remedy for those injured by local government officers and employees acting without malice and in the scope of employment.'" *Faulk v. Ewing,* 371 Md. 284, 298, 808 A.2d 1262, 1272

---

11. Md.Code (1957, 1981 Repl.Vol., 1986 Cum.Supp.), Art. 25A, § 5(CC) was repealed by § 1 of Ch. 594 of the Acts of 1987, which also enacted the LGTCA.

(2002); *Moore v. Norouzi,* 371 Md. 154, 165, 807 A.2d 632, 639 (2002); *Ashton,* 339 Md. at 107–08, 660 A.2d at 465. The Act affords a remedy to those injured by acts of local government officers and employees, while "ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public officials' acts." *Ashton,* 339 Md. at 108, 660 A.2d at 466. Sections 5–304(a) and (b) of the LGTCA provide that potential claimants must give notice of impending claims within 180 days of the injury, and that such notice be given to designated government officials or other representatives:

> (a) *Notice required.*—Except as provided in subsection (c) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within **180 days** after the injury.

> (b) *Manner of giving notice.*—(1) Except in Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county commissioner, county council, or corporate authorities of a defendant local government, or:

> (I) In Baltimore City, to the City Solicitor;

> (ii) In Howard County, to the County Executive; and

> (iii) In Montgomery County, to the County Executive.

(Emphasis added). Md.Code, § 5–304(a), (b) of the Courts and Judicial Proceedings Article.

 The notice requirement of Sections 5–304(a) and (b) are intended to apprise a local government "of its possible liability at a time when it could conduct its own investigation, *i.e.,* while the evidence was still fresh and the recollection of the witnesses was undiminished by time, 'sufficient to ascertain the character and extent of the injury and its responsibility in connection with it.'" *Faulk,* 371 Md. at 298–99, 808 A.2d at 1272, quoting *Williams v. Maynard,* 359 Md. 379, 389–90,

754 A.2d 379, 385 (2000), quoting in turn *Jackson v. Bd. of County Comm'rs*, 233 Md. 164, 167, 195 A.2d 693, 695 (1963). We have expressly held that the LGTCA notice requirements are a condition precedent to maintaining an action against a local government or its employees to the extent otherwise not entitled to immunity under the LGTCA. *Faulk*, 371 Md. at 304, 808 A.2d at 1276; *Grubbs v. Prince George's County*, 267 Md. 318, 320–21, 297 A.2d 754, 755–56 (1972) (stating "we have regarded it [the predecessor statute to the LGTCA, Md.Code (1957, 1972 Rcpl.Vol.), Art. 57, § 18] as a condition precedent to the right to maintain an action for damages"); *see also Neuenschwander v. Washington Suburban Sanitary Comm'n*, 187 Md. 67, 77, 48 A.2d 593, 599 (1946) (stating that "the notice is a condition precedent to the right to maintain the suit"), *overruled on other grounds by statute as stated in Arnold v. Prince George's County*, 270 Md. 285, 311 A.2d 223 (1973); *Leppo v. State Highway Admin.*, 330 Md. 416, 423, 624 A.2d 539, 542 (1993) (interpreting a statutory notice requirement in the Maryland Tort Claims Act to be a condition precedent to institution of a third-party action against the State); *Redfern v. Holtite Mfg. Co.*, 209 Md. 106, 111–12, 120 A.2d 370, 372–73 (1956) (finding that statutory notice was a condition precedent to applying for payment for deaths pursuant to the Workmen's Compensation Act).

We have previously defined a "condition precedent" as "a condition attached to the right to sue at all." *Waddell v. Kirkpatrick*, 331 Md. 52, 59, 626 A.2d 353, 356 (1993). It "operates as a limitation of the liability itself as created, and not of the remedy alone." *Id.*, quoting *State v. Parks*, 148 Md. 477, 480, 129 A. 793, 794 (1925). "The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of the right." *Id.* Conversely, "a statute of limitations affects only the remedy, not the cause of action." *Id.* A condition precedent cannot be waived under the common law and a failure to satisfy it can be raised at any time because the action itself is fatally flawed if the condition is not satisfied. This requirement of strict or substantial compliance with a

condition precedent is of course subject to abrogation by the General Assembly, *see, e.g., State v. Manck,* 385 Md. 581, 870 A.2d 196 (2005) (recognizing the legislature's ability to enact statutes that abrogate the common law); *Davis v. Slater,* 383 Md. 599, 615–16, 861 A.2d 78, 87–88 (2004) (same); *State v. Green,* 367 Md. 61, 76–77, 785 A.2d 1275, 1283–84 (2001) (same), which it has done through the creation of the "good cause" exception to the LGTCA.

## B. Governmental and Proprietary Activities

 Before we can address Petitioner's arguments with respect to the Equal Protection Clause, the Due Process Clause, and Article 19 of the Maryland Declaration of Rights, we must determine whether Montgomery County's provision of health care through the operation of a clinic and subsidization of hospital services is a governmental or proprietary function because this conclusion will determine whether the County may properly assert immunity as a defense in the present action.

 In *Mayor and City Council of Baltimore v. Blueford,* 173 Md. 267, 195 A. 571 (1937), and reaffirmed in *Austin v. Mayor and City Council of Baltimore,* 286 Md. 51, 405 A.2d 255 (1979), we "recognized the difficulty in distinguishing between those functions which are governmental and those which are not, [and] established guidelines in [*Blueford*]." *E. Eyring & Sons Co. v. City of Baltimore,* 253 Md. 380, 382–83, 252 A.2d 824, 825 (1969). We stated, "in truth there is no universally accepted or all-inclusive test to determine whether a given act of a municipality is private or governmental in its nature, but the question is usually determined by the public policy recognized in the jurisdiction where it arises." *Blueford,* 173 Md. at 275–76, 195 A. at 576. Therefore, we crafted the following guidelines:

> Where the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole

public, and has in it no element of private interest, it is governmental in its nature.

*Id.* at 276, 195 A. at 576. Moreover, we explained that:

[I]t is better that the adequate performance of such an act be secured by public prosecution and punishment of officials who violate the duties imposed upon them in respect to it than to disburse public funds dedicated to the maintenance of such public conveniences as public parks, playgrounds, hospitals, swimming pools, and beaches maintained at the public expense to private persons who have suffered loss through the negligence or default of municipal employees or agents charged with their management.

*Id.*

In *Gutowski v. Mayor and City Council of Baltimore,* 127 Md. 502, 96 A. 630 (1916), we created a temporal means of categorizing local government action as either proprietary or governmental in nature, and we noted that all of the cases imposing liability on municipalities had involved proprietary functions. *Id.* at 508, 96 A. at 632. Extensive research has revealed no case prior to *Gutowski* where this Court has determined that a local government's provision of subsidized health care to less affluent residents, or more generally the administration of a hospital by a municipality, created liability on the part of the local government as a proprietary function. In fact, our cases appear to indicate the contrary.

In *Finan v. Mayor and City Council of Cumberland,* 154 Md. 563, 141 A. 269 (1928), we recognized that "[f]or many years there has been general statutory authority given to municipal and county authorities in Maryland to provide hospitals or temporary places for the reception of the sick. . . . And during a large part of the existence of state government, hospitals of various kinds have been maintained here by governmental agencies, and it has generally been regarded and treated as a normal governmental activity." *Id.* at 564–65, 141 A. at 270; *see also Thomas v. Bd. Of County Commissioners of Prince George's County,* 200 Md. 554, 559, 92 A.2d 452, 454 (1952) (noting that "[p]erhaps it has been assumed by

litigants that a municipality is no more liable than a charitable corporation. In at least two cases in this Court, operation of a hospital is mentioned as an illustration of just such a governmental function"); *Blueford,* 173 Md. at 276, 195 A. at 576 (stating, in *dicta,* that hospitals are considered governmental functions of the municipality).

Moreover, it is beyond question that the County's program providing prenatal health care to low-income mothers residing therein is solely for the public benefit and tends to benefit the public health and promote the welfare of the public. The County's program enables mothers who otherwise would not be able to afford prenatal care or to have their child delivered in a hospital to do so in an amount reduced from $5,000.00 to $1,500.00 payable solely to the hospital.[12] As a result, the County's program, "Project Delivery," in this circumstance is entitled to absolute governmental immunity under the terms of the LGTCA. Therefore, Petitioner cannot prevail on the claim directly against Montgomery County due to its governmental immunity. Thus, the only issue remaining is the applicability of the 180–day notice requirement with respect to Petitioner's claim against Dr. Footer and Montgomery County's obligation to defend and indemnify Dr. Footer under the LGTCA.

### C. Constitutional Claims

Petitioner argues that the notice provision of the LGTCA as applied to minors violates the Equal Protection Clause of the Fourteenth Amendment, deprives him of a property interest without due process of law under the Fourteenth Amendment, and denies him access to the courts in violation of Article 19 of the Maryland Declaration of Rights. Although we have not

---

12. Although Ms. Rios paid $ 8.00 per visit to the clinic run by the Montgomery County Health Department, we have stated that the mere receipt of a fee for a service does not automatically convert an otherwise governmental function into a proprietary one. *Austin v. Mayor and City Council of Baltimore,* 286 Md. 51, 66, 405 A.2d 255, 263 (1979). Moreover, in *Austin,* we held that where the fee is nominal, we may infer a lack of profits inuring to the County from its collection. *Id.*

addressed the constitutionality of the notice provision of the LGTCA, specifically, we recently had the opportunity to address similar issues with respect to the 180–day claim condition precedent of the Maryland Tort Claims Act[13] as applied to minors in *Johnson v. Maryland State Police*, 331 Md. 285, 628 A.2d 162 (1993), using analysis that we find appropriate to the case at bar, because of the similarity of terminology and purpose in the two statutes, which is to permit the governmental entity involved to better predict its potential costs for future budgeting. *See Heron*, 361 Md. at 263–64, 761 A.2d at 58–59 (adopting the time of injury interpretation under the Maryland Tort Claims Act for the purposes of the LGTCA). Therefore, because the 180–day claim requirement of the Maryland Tort Claims Act, like the 180–day notice requirement of the LGTCA, is a condition precedent to the filing of a suit rather than a statute of limitations, we find our constitutional analysis in *Johnson* equally applicable to the case *sub judice*.

---

**13.** Md.Code (1984), § 12–106(b) of the State Government Article provided:

> A claimant may not institute an action under this subtitle unless:
> (1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to the person or property that is the basis of the claim;
> (2) the Treasurer or designee denies the claim finally; and
> (3) the action is filed within 3 years after the cause of action arises.

In 1995, the General Assembly amended Section 12–106(b) of the State Government Article to extend the period for filing the claim from 180–days to one year. 1995 Md. Laws Ch. 437, § 1. The length of the statutory period does not alter the analysis or its applicability to the notice requirement of the LGTCA.

The Maryland Tort Claims Act was enacted by the General Assembly in 1984 for the purpose of creating a remedy for individuals injured by tortious conduct attributable to the State. Md.Code (1984), § 12–102 of the State Government Article. Both the Maryland Tort Claims Act and the LGTCA were designed to expand the individual's right to obtain remuneration for injury from the government, and the purpose of both conditions precedent were to provide notice to the government so that it may better predict liability and make appropriate budgetary decisions. *See Faulk*, 371 Md. at 298–99, 808 A.2d at 1272, quoting *Williams v. Maynard*, 359 Md. 379, 389–90, 754 A.2d 379, 385 (2000), quoting in turn *Jackson v. Bd. of County Comm'rs*, 233 Md. 164, 167, 195 A.2d 693, 695 (1963).

In *Johnson*, the plaintiffs, minors at the time of the events at issue in the case, sued the State for damages arising out of an automobile accident involving a State police vehicle. *Johnson*, 331 Md. at 288, 628 A.2d at 163. Thirteen months after the accident, the plaintiffs, through their attorney, filed a notice of claim with the State Treasurer. *Id.* After the claimants filed a complaint in the Circuit Court for Allegany County, the State moved to dismiss because the claimants failed to satisfy the 180-day claim requirement set forth in the Maryland State Tort Claims Act.[14] *Id.* The Circuit Court granted the State's motion and denied the claimants' motion for reconsideration. *Id.* at 288–89, 628 A.2d at 163.

In *Johnson*, the claimants presented arguments nearly identical to those argued by Petitioner in the present case. The *Johnson* claimants argued that the 180-day claim requirement "arbitrarily created two classes of injured parties, namely those injured by government torts and those damaged by private torts" in violation of the Equal Protection Clause, that the application that the claim requirement "deprive[d] them of a property right without due process of law" because it denies them the ability to prosecute their claim against the State, and that the claim requirement, as applied to minors, denied them "a remedy in the courts as guaranteed by Article 19 of the Maryland Declaration of Rights." *Johnson*, 331 Md. at 292, 628 A.2d at 165.

### Equal Protection Claims

In *Johnson*, the claimants conceded that the classification created by the condition precedent was not subject to

---

14. Md.Code (1984, 2002 Repl.Vol.), § 12–106(b) of the State Government Article provides:

 (b) *Claim and denial required.*—A claimant may not institute an action under this subtitle unless:
 (1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim;
 (2) the Treasurer or designee denies the claim finally; and
 (3) the action is filed within 1 year after the claim is denied finally or 3 years after the cause of action arises, whichever is later.

strict scrutiny or heightened scrutiny under the Equal Protection Clause of the Fourteenth Amendment. *Id.*[15] Rather, they argued that the classification had no rational basis and thus, was unconstitutional. *Id.* In the case at bar, Petitioner also conceded that the "rational basis" test was the appropriate standard to apply. In *Johnson,* we determined that because no suspect or quasi-suspect class was created and no fundamental or important right was implicated, rational basis was the proper test. *Id.* at 295–97, 628 A.2d at 167. Likewise, we find that rational basis remains the applicable level of scrutiny in the case *sub judice.*

 We have stated that "[a] statutory classification viewed under the rational basis standard enjoys a strong presumption of constitutionality and will be invalidated only if the classification is clearly arbitrary." *Murphy,* 325 Md. at 356, 601 A.2d at 108. We will not declare the statute unconstitutional "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the Court] can only conclude that the [governmental] actions were irrational." *Id.* at 355, 601 A.2d at 108.

The *Johnson* claimants relied upon the holdings in cases from a small number of jurisdictions which adhered to the minority view that distinguishing between private and governmental tortfeasors failed the rational basis test. *Id.* at 293, 628 A.2d at 165–66. We, however, rejected such a position and instead agreed with "those cases holding that administrative claim requirements, in statutes waiving state governmental tort immunity, do not violate equal protection principles." *Id.* at 296, 628 A.2d at 167. We noted that "[w]hether, and to what extent there should be state governmental immunity

---

**15.** Section 1 of the Fourteenth Amendment provides in pertinent part:
No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV, § 1.

from tort suits has long been regarded as the prerogative of the Maryland General Assembly." *Id.*

Moreover, we found that "the 180–day claim requirement meets the rational basis test." *Id.* We agreed that because of the State's greater capacity for tort liability, "the administrative requirement allows the State to predict its potential tort liability more accurately, so that it may enact a more accurate annual budget." *Id.* Furthermore, we found that "the claim requirement enables the State to make early decisions on the merits of particular claims, and allows the State to take remedial safety measures more quickly, thereby minimizing the cost of litigation for the taxpayers." *Id.* We held that such reasons "furnish rational grounds for differentiating between claims against the State and claims against private tortfeasors." *Id.*

In the present case, Petitioner presents arguments similar to those of the *Johnson* plaintiffs concerning the application of the 180–day notice requirement of the LGTCA to minors and urges us to find that no rational basis exists for the distinction between an employee of the local government as tortfeasor where the local government is required to defend and indemnify the employee and private individuals, and thus, to overrule *Johnson.* We decline to do so, and instead, adopt the reasoning in *Johnson* as equally applicable to the notice requirement of the LGTCA where the local government is involved in a governmental function.

We have recognized that "[t]he Legislature thus has the power to enact a statute requiring that, before suit for damages shall be instituted against a municipal corporation, a written notice of the claim shall be presented to the municipal authorities within a specified period after injury or damage is sustained." *Neuenschwander,* 187 Md. at 76, 48 A.2d at 599. As we have stated previously, "the purpose of requiring notice was

> to protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be

apprised of its possible liability at a time when it could conduct its own investigation.

*Maynard,* 359 Md. at 389–90, 754 A.2d at 385, quoting *Bartens v. Mayor & City Council of Baltimore,* 293 Md. 620, 626, 446 A.2d 1136, 1138–39 (1982). Among other functions, the notice requirement enables the local government to relatively accurately predict its potential tort liability and budget accordingly. Therefore, we conclude, consistent with our reasoning in *Johnson,* that the reasons set forth herein furnish sufficient rational basis for differentiating between claims against employees of the local government when the activity at issue is governmental and claims against private tortfeasors. We hold that the notice requirement of the LGTCA does not violate the Equal Protection Clause of the Fourteenth Amendment.

## Deprivation of Due Process of Law Claims

 In *Johnson,* we addressed claims of due process violations identical to those presented in the present case. Like Petitioner in the case at bar, the claimants in *Johnson* relied primarily on the decision of the Supreme Court of Michigan in *Grubaugh v. City of St. Johns,* 384 Mich. 165, 180 N.W.2d 778 (1970). *Johnson,* 331 Md. at 298, 628 A.2d at 168. The court in *Grubaugh* held that a 60–day administrative claim requirement, which was a condition for bringing a tort suit against a governmental entity, was, as applied to minors, a violation of "substantive due process." *Grubaugh,* 180 N.W.2d at 783–84. The *Grubaugh* opinion was based on several premises, including that the waiver of governmental immunity was intended to put governmental entities on the same level as private tortfeasors, that the plaintiff had a vested property right in a tort cause of action against the tortfeasor, and that the administrative claim requirement was arbitrary. *Id.* Thus, the *Grubaugh* court concluded that the claim requirement represented an arbitrary infringement on the plaintiff's vested property right and thus was a violation of substantive due process. *Id.* at 784.

Judge Eldridge, writing for this Court, in *Johnson,* however, rejected the *Grubaugh* reasoning, stating, "[A] conditional

or partial waiver of sovereign immunity certainly is not intended to put governmental entities on exactly the same footing as private tortfeasors." *Johnson,* 331 Md. at 298, 628 A.2d at 168. Moreover, we stated that "we cannot agree that there is a constitutionally protected vested property right in a particular common law tort cause of action," *id.* at 298–99, 628 A.2d at 168, nor did we consider the administrative claims requirement as arbitrary or unreasonable based upon our discussion of the plaintiffs' other constitutional claims. *Id.* at 299, 628 A.2d at 169.

We continue to remain unconvinced by the reasoning explicated in *Grubaugh.* The LGTCA cannot be considered to have been intended to put local governments participating in governmental activities on the same footing as private tortfeasors, as the LGTCA only requires local governments to defend and indemnify their employees if the provisions of the LGTCA are satisfied. Furthermore, we continue to adhere to the view that under the circumstances of the case at bar it is not possible to have a property interest in a cause of action arising out of a common law tort. *Johnson,* 331 Md. at 298–99, 628 A.2d at 168; *Murphy,* 325 Md. at 362–64, 601 A.2d at 112, quoting *Duke Power Co. v. Carolina Env. Study Group,* 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595, 620 n. 32 (1978) ("[o]ur cases have clearly established that '[a] person has no property, no vested interest, in any rule of the common law' "). We determine, therefore, that the notice requirement of the LGTCA does not act to deprive Petitioner of a vested property interest without due process of law.

### Claims under Article 19 of the Maryland Declaration of Rights

 Article 19 of the Maryland Declaration of Rights provides:

That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land.

Petitioner, like the claimants in *Johnson,* argues that, if the 180–day notice requirement is not tolled for minors, the requirement violates their right of access to the courts under Article 19. *Johnson,* 331 Md. at 292, 628 A.2d at 165.

As we stated in *Johnson,* "Article 19 does guarantee access to the courts . . . . however, a 'statutory restriction upon access to the courts violates Article 19 only if the restriction is unreasonable.' " *Johnson,* 331 Md. at 297, 628 A.2d at 168, quoting *Murphy,* 325 Md. at 365, 601 A.2d at 113; *see e.g., Lee v. Cline,* 384 Md. 245, 263, 863 A.2d 297, 308 (2004); *Piselli v. 75th Street Medical,* 371 Md. 188, 205–06, 808 A.2d 508, 518 (2002).

As with the Maryland Tort Claims Act, the General Assembly has waived the local government's ability to avoid responsibility for the defense and indemnification of employees under the LGTCA, but has required timely notice as a condition of that waiver. Prior to the enactment of the LGTCA, the County would not have been required to defend and indemnify its employees for wrongdoing committed during a governmental activity. The individual would have had no assurance that a judgment would be paid. The LGTCA provides such guarantees if notice is furnished within 180–days of the injury. In so doing, we recognize that a minor is dependent upon an adult to comply with the notice provision, but, we cannot craft an addendum to the LGTCA to toll the requirement. That is the prerogative of the General Assembly.

Nevertheless, Petitioner relies primarily on our reasoning in *Piselli v. 75th Street Medical,* 371 Md. 188, 808 A.2d 508 (2002), a more recent case than *Johnson,* although similarly authored by Judge Eldridge, for the argument that the 180–day notice requirement as applied to minors violates Article 19 of the Maryland Declaration of Rights. In *Piselli,* the parents of a son with extensive damage to the growth plates brought a medical malpractice action as next friend of their son five years after his injury, beyond the time period of the statute of

limitations. *Id.* at 196, 808 A.2d at 512–13. The question presented to this Court was "whether the time limitations prescribed by [Section] 5–109 [of the Courts and Judicial Proceedings Article [16]], as applied to an injured minor's claim, are unreasonable restrictions upon a traditional remedy and the minor's access to the courts and, therefore, are in violation of Article 19 [of the Maryland Declaration of Rights]." *Id.* at 208, 808 A.2d at 519–20. In *Piselli,* we found that it was "an established principle in Maryland law that time periods for bringing suit are tolled during infancy." *Id.* at 214, 808 A.2d at 523. We determined that "[t]he restrictions upon a minor's remedy and access to the courts, contained in subsections (b), (c) and (e) of [Section] 5–109 represent a drastic departure from a principle which has governed minors' causes of action for more than 500 years." *Id.* at 215, 808 A.2d at 524. Therefore, we concluded that the statutes of limitations contained in Section 5–109 as applied to minors violated Article 19 of the Maryland Declaration of Rights as an unreasonable restriction. *Id.*

---

**16.** Md.Code (1987, 2002 Repl.Vol., 2004 Cum.Supp.), § 5–109 of the Courts and Judicial Proceedings Article entitled "Actions against health care providers" states in pertinent part:

(a) *Limitations.*—An action for damages for an injury arising out of the rendering of or failure to render professional services by a health case provider . . . shall be filed within the earlier of:

(1) Five years of the time the injury was committed; or

(2) Three years of the date the injury was discovered.

(b) *Actions by claimants under age 11.*—Except as provided in subsection (c) of this section, if the claimant was under the age of 11 years at the time the injury was committed, the time limitations prescribed in subsection (a) of this section shall commence when the claimant reaches the age of 11 years.

(c) *Exceptions to age limitations in certain actions.*—

(1) The provisions of subsection (b) of this section may not be applied to an action for damages for an injury:

(I) To the reproductive system of the claimant; or

(ii) Caused by a foreign object negligently left in the claimant's body.

(2) In an action for damages for an injury described in this subsection, if the claimant was under the age of 16 years at the time the injury was committed, the time limitations prescribed in subsection (a) of this section shall commence when the claimant reaches the age of 16 years.

There are significant differences between the case at bar and the facts of *Piselli*. Under the facts of the case *sub judice*, the LGTCA does not restrict a "traditional remedy or access to the courts" unlike the effect of Section 5–109 of the Courts and Judicial Proceedings Article. Absent the enactment of the LGTCA, local governments would not be required to defend and indemnify their employees in suits arising out of non-constitutional torts committed during "governmental" activities other than nuisance actions, *see, e.g., DiPino*, 354 Md. at 47, 729 A.2d at 369–70 ("A local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity."). Therefore, the LGTCA cannot be described as restricting a "traditional remedy or access to the courts" when it legislatively permits plaintiffs to enforce judgments obtained from suit against the employee against the local government. Moreover, to hold that the reasoning in *Piselli* applies would be to find that the LGTCA purports to place local governments or their employees engaged in governmental activities in the same position legally as the private tortfeasors in *Piselli*, which was not the intent of the General Assembly. The notice provision of the LGTCA is a condition precedent to the right of action; limitations statutes create defenses. The focus of the two, i.e., notice *vis a vis* limitations, is very different. Therefore, both Ms. Rios's and Luis's actions are barred for failing to satisfy the notice requirement of the LGTCA.[17]

---

17. If, however, the injury at issue in this case had arisen from a proprietary activity by the County, the *Johnson* analysis may not be the appropriate analysis to apply; the reasoning explicated in *Piselli* may be the proper standard because where the County does not have governmental immunity as a defense, it is liable in tort for damages like any other tortfeasor. *See, e.g., DiPino*, 354 Md. at 47, 729 A.2d at 369–70; *Katz v. Washington Suburban Sanitary Comm'n*, 284 Md. 503, 508 n. 3, 397 A.2d 1027, 1030 n. 3 (1979); *Mayor and City Council of Baltimore v. State, use of Ahrens*, 168 Md. 619, 628, 179 A. 169, 173 (1935).

### D. Good Cause

### Minority As Good Cause *Per Se*

 As we stated previously, we have consistently recognized that a local government possesses absolute governmental immunity for activities that are properly categorized as "governmental" in nature as opposed to "proprietary," and that the General Assembly, in requiring that notice be provided within a specified window of time, created a condition precedent to a suit where the local governmental entity was required to indemnify and defend its employees by statute. Concomitant with its power to place conditions on an individual's ability to maintain a suit in which the local government must act as an insurer is the General Assembly's ability to relax the strict applicability of that condition. As we have stated, "the task of abrogating or altering the doctrine of sovereign or governmental immunity is one to be performed by the legislature." *Austin v. Mayor and City Council of Baltimore,* 286 Md. 51, 58, 405 A.2d 255, 259 (1979); *see also Faulk,* 371 Md. at 310, 808 A.2d at 1278–79 (Cathell, J. dissenting). Any alteration of the local government's obligations in a tort suit, including conditions set for requiring defense and indemnification of employees, is entirely within the prerogative of the General Assembly. Thus, we find no contradiction or conflict inherent in our statements that a condition precedent must be either strictly or substantially complied with to maintain suit, and the General Assembly's decision to permit the condition to be waived upon a showing of good cause under the LGTCA.

 In addition to other factual circumstances pertinent to the case at bar, Petitioner argues that his being a minority *per se* constitutes good cause under Section 5–304(c). Section 5–304(c) of the LGTCA provides for a waiver of the notice requirement stating:

> Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and

for good cause shown the court may entertain the suit even though the required notice was not given.

Md.Code (1987, 2002 Repl.Vol., 2004 Cum.Supp.), § 5–304(c) of the Courts and Judicial Proceedings Article. In *Heron v. Strader,* 361 Md. 258, 761 A.2d 56 (2000), we stated that "[t]he test for whether good cause exists pursuant to section 5–304(c) is 'whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.'" *Id.* at 271, 761 A.2d at 63, citing *Westfarm Assoc. v. Washington Suburban Sanitary Comm'n,* 66 F.3d 669, 676–77 (4th Cir. 1995). Judge Raker, writing for this Court in *Heron,* identified four categories of good cause recognized by our sister jurisdictions:

> Several other jurisdictions have sought to define good cause for late filing under public tort claims acts. While courts generally consider a combination of factors, circumstances that have been found to constitute good cause fit into several broad categories: excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), *see, e.g., Viles v. State,* 66 Cal.2d 24, 56 Cal.Rptr. 666, 423 P.2d 818, 821–22 (1967); *Black v. Los Angeles County,* 12 Cal.App.3d 670, 674–75, 91 Cal.Rptr. 104 (1970); *Kleinke v. Ocean City,* 147 N.J.Super. 575, 371 A.2d 785 (1977); serious physical or mental injury and/or location out-of-state, *see, e.g., Silva v. New York,* 246 A.D.2d 465, 668 N.Y.S.2d 189 (1998); *S.E.W. Friel Co., v. New Jersey Turnpike Auth.,* 73 N.J. 107, 373 A.2d 364 (1977); *Kleinke,* 371 A.2d at 788; the inability to retain counsel in cases involving complex litigation, *see, e.g., Torres v. Jersey City Med. Ctr.,* 140 N.J.Super. 323, 356 A.2d 75 (1976); and ignorance of the statutory notice requirement, *see, e.g., Bell v. Camden County,* 147 N.J.Super. 139, 370 A.2d 886 (1977).

*Heron,* 361 Md. at 272, 761 A.2d at 63–64.[18] We have also found good cause to exist where representations made by local

---

**18.** In *Heron,* we did not decide whether ignorance of the statutory notice requirement could constitute good cause under the LGTCA, but

government representatives are misleading. *See Moore*, 371 Md. at 165, 807 A.2d at 639. From the facts of this case, Petitioner apparently advocates Luis's minority standing as grounds for excusable mistake or neglect.

 Petitioner urges us to find that the trial court abused its discretion in determining that Luis as a minority did not satisfy the good cause standard. We decline to find that a person who is a minority *per se* constitutes good cause, because to do so would undermine the purpose of the notice requirement and would essentially rewrite the statute to include a broad exception for minors that the General Assembly did not contemplate. We "are not free to enlarge that consent to be sued which the Government, through [the General Assembly] has undertaken to carefully limit." *Mann v. United States*, 399 F.2d 672, 673 (9th Cir.1968). "If there were a general exemption based on infancy, it would be possible for notice to be effectively delayed for as much as 20 years until the infant had reached his majority, and the investigation of the claim under those circumstances would be extremely difficult if not practically impossible." *Mullins v. Thorne*, 254 Md. 434, 442, 255 A.2d 409, 413 (1969) (examining the 180–day notice condition precedent for filing claims with the Unsatisfied Claim and Judgment Fund as applied to minors).

This case is factually similar to the circumstances underlying our opinion in *Lopez v. Maryland State Highway Administration*, 327 Md. 486, 610 A.2d 778 (1992), another case addressing the application of the notice provision of the Maryland Tort Claims Act to minors. In that case, Helen Lopez filed a wrongful death action as next friend of her newborn son arising out of the death of her son's putative father eight months prior to the child's birth under the Maryland Tort Claims Act. *Id.* at 488–89, 610 A.2d at 779. When the State challenged the timeliness of the claim, we held that the 180–

---

rather left that question open and cited to *Williams v. Montgomery County*, 123 Md.App. 119, 716 A.2d 1100 (1998), in which the Court of Special Appeals specifically rejected ignorance of the law requiring notice as good cause. *Id.* at 272 n. 13, 761 A.2d at 64 n. 13. The question continues to remain open.

day period in which to file a claim as a condition precedent under the Maryland Tort Claims Act began to run on the date of the son's birth because that was when his injury occurred. *Id.* at 492–93, 610 A.2d at 780–81. We found no grounds for exempting even a newborn child from the claim requirements of the Maryland Tort Claims Act. *Id.* at 493, 610 A.2d at 781. We discern no meaningful difference between the circumstances of *Lopez* and those of the case *sub judice* so as to differentiate between the application of the notice requirement of the Maryland Tort Claims Act to minors and that of the LGTCA to minors and Luis in particular. Therefore, we conclude that minority does not constitute good cause *per se* under the LGTCA.

Our determination is consistent with that of our sister jurisdictions which also have declined to accept a *per se* rule that minority excuses compliance with a statutory condition precedent requiring notice to a governmental defendant. *See, e.g., Rabanar v. City of Yonkers,* 290 A.D.2d 428, 736 N.Y.S.2d 93 (2002) (concluding that infancy of an injured plaintiff, standing alone, does not compel the granting of an application for leave to serve a late notice of claim, but rather the plaintiff must show a nexus between the delay and the infancy); *Matarrese v. New York City Health and Hospitals Corp.,* 215 A.D.2d 7, 633 N.Y.S.2d 837, 837 (1995) (holding that the trial court improvidently exercised its discretion in granting father's application for leave to serve late notice of claim against city hospital corporation eight years after alleged negligent treatment of his son at time of his birth as it was manifestly unrelated to son's minority); *Perez By and Through Yon v. Bay Area Hosp.,* 315 Or. 474, 846 P.2d 405, 409 (1993) (stating that the 270–day notice period in regard to claim by minor child against public body is not tolled pending appointment of guardian ad litem); *McNicholas v. Bickford,* 612 A.2d 866, 869 (Me.1992) (concluding minority, by itself, does not constitute good cause for failure to file claim for injury by governmental employee within 180–day period); *George v. Town of Saugus,* 394 Mass. 40, 474 N.E.2d 169, 171–72 (1985) (finding that the statute which tolls statute of limitations for minors does not

apply to presentment requirement of Tort Claims Act and thus the presentment requirement must be met regardless of age of claimant); *City of Birmingham v. Weston,* 233 Ala. 563, 172 So. 643, 645 (1937) (stating that statutes requiring claims against municipality to be filed or presented within certain time are generally held not to be statutes of limitation so as to excuse minor from preening claim within prescribed time); *Davidson v. City of Muskegon,* 111 Mich. 454, 69 N.W. 670, 670–71 (1897) (holding that because there was no provision excepting infants from the limitation, the requirement applied to infants and adults alike).

The fact that the trial court, in its discretion, was not persuaded that Ms. Rios's limited English proficiency or immigrant status constituted good cause does not rise to the level of an abuse of discretion as it was not a determination that was exceptional, extraordinary, or egregious especially under the circumstances where Spanish-speaking nurses and translated forms were available. Therefore, we are not persuaded that Petitioner's immigrant status or limited English proficiency constitute good cause *per se* and find that the trial court did not abuse its discretion in considering it with the totality of the facts in this case.

Although minority does not constitute good cause *per se,* our inquiry does not end here, because Petitioner also asks us to review whether the trial judge abused his discretion in failing to find good cause based upon an evaluation of the circumstances surrounding the failure to provide notice. The Circuit Court considered Luis's minority, the ten-year delay in filing the claim, Ms. Rios's limited knowledge of English, available means to investigate, the lack of any form of investigation during the ten years after Luis's injury, and the fact that the County did not impede or hamper any possibility of investigation or conceal material facts. From all of those factors, the court concluded that good cause did not exist. We do not find that such a determination is beyond the view that a reasonable person would take of the facts of the case *sub judice.* As such, we conclude that the trial court did not

abuse its discretion in determining that good cause did not exist for waiving the notice requirement under the LGTCA.

## IV. Conclusion

We conclude that the notice requirement under Section 5–304 of the LGTCA, Md.Code (1974, 2002 Repl.Vol., 2004 Cum.Supp.), § 5–304 of the Courts and Judicial Proceedings Article, is valid as applied to minors under the Federal Constitution and Article 19 of the Maryland Declaration of Rights where the underlying local governmental action was governmental, not proprietary in nature. Moreover, we do not find that the trial court's determination that the facts of this case did not show good cause under Section 5–304(c), was an abuse of discretion. Thus, we affirm the judgment of the Court of Special Appeals.

*JUDGMENT AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE PETITIONER.*