REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1036

September Term, 2013

_____

STINYARD A. BLUE

v.

ANTONIO ARRINGTON

_____

Krauser, C.J.,
Hotten,
Kenney, James A., III
 (Retired, Specially Assigned),

JJ.

_____

Opinion by Krauser, C.J.

_____

Filed: January 30, 2015

Appellant Stinyard Blue, an employee of Baltimore City, was injured by a fellow employee, appellee Antonio Arrington, while both men were acting within the scope of their Baltimore City employment. After receiving workers' compensation for his injuries, Blue brought a negligence action against Arrington, in the Circuit Court for Baltimore City, for the same injuries. In response, Baltimore City filed, on Arrington's behalf,[1] a motion to dismiss, relying on a provision of the Local Government Tort Claims Act ("LGTCA"), which prohibits a local government employee from suing "a fellow employee for tortious acts or omissions committed within the scope of employment," if the injury sustained by the local government employee is "compensable under the Maryland Workers' Compensation Act." Md. Code (1973, 2013 Repl. Vol.), § 5-302(c) of the Courts & Judicial Proceedings Article ("CJP"). The grant of that motion by the Baltimore City circuit court prompted this appeal, in which Blue presents three questions for our review:

I. Does CJP § 5-302(c) of the LGTCA, by prohibiting local government employees from suing their co-employees individually for tortious acts or omissions committed within the scope of their employment, violate the Equal Protection Clause of the United States Constitution and Article 24 of the Maryland Declaration of Rights?

II. Does CJP § 5-302(c) of the LGTCA violate Article 19 of the Maryland Declaration of Rights by denying him a remedy?

III. Does CJP § 5-302(c) of the LGTCA create a valid exception to Maryland Code (1991, 2008 Repl. Vol.), § 9-902(c) of the Labor and

---

[1]Under the Local Government Tort Claims Act, a local government "shall provide for its employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an employee within the scope of employment with the local government." Md. Code (1973, 2013 Repl. Vol.), § 5-302(a) of the Courts & Judicial Proceedings Article.

Employment Article ("LE"), which generally allows an employee to bring a third-party suit against a co-employee?

Because we conclude that CJP § 5-302(c) does not violate Blue's equal protection rights or Article 19 of the Declaration of Rights by unreasonably restricting access to the courts and because Blue presented no argument in his brief supporting his contention that CJP § 5-302(c) is "ambiguous" when read in the context of the "larger statutory scheme embodied" in LE § 9-902(c), we affirm.

**Facts and Procedural History**

On July 5, 2011, Blue and Arrington were working for Baltimore City. On that day, Blue was performing his duties as a "Seasonal Maintenance Aide" on a garbage truck. In that capacity, he was "side mounted" on the outside of the garbage truck that Arrington was driving. "[W]hile talking on a cell phone," Arrington "attempted to make a turn," crushing Blue's "legs and abdomen between a fence and a brick wall," as he clung to the side of the truck. Following that accident, Blue filed a claim, under the Maryland Worker's Compensation Act, for which he received compensation for lost wages, medical expenses, and permanent disability.

Thereafter, Blue filed a complaint, in the Baltimore City circuit court, against Arrington, alleging that Arrington "had a duty of care to operate his vehicle in a proper fashion and [had] breached this duty of care by failing to properly turn his vehicle while keeping a proper lookout for" Blue. The City, on behalf of Arrington, filed a motion to dismiss, asserting that "[b]y statute, local government employees may not file an action

2

against a negligent co-employee for tortious conduct in the scope of employment resulting in injuries which are compensable under the Worker's Compensation Act." Blue's "exclusive remedy" for the injuries he sustained, the motion stated, was the remedy provided by the compensation statute. The circuit court agreed and granted Arrington's motion to dismiss, whereupon Blue noted this appeal.

## Discussion

### I.

Blue contends that CJP § 5-302(c) violates his equal protection rights because that provision denies local government employees, as a class, the right to sue co-employees for tortious conduct, a legal right that is provided to nonlocal government employees by LE § 9-902(c)[2].

The Fourteenth Amendment states: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S.

---

[2]LE § 9-902(c) provides:

> If the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund does not bring an action against the third party within 2 months after the Commission makes an award, the covered employee or, in case of death, the dependents of the covered employee may bring an action for damages against the third party.

The Court of Appeals has held that a co-employee is considered a "third party" under that provision. *See Bd. of Educ. of Prince George's Cnty. v. Marks-Sloan*, 428 Md. 1, 33 (2012) ("In accordance with Maryland law, a co-employee is considered a third party against whom a suit for tort damages may be brought; thus, Respondent was permitted to bring a negligence action against Mr. Iglehart, in accordance with LE § 9-902.").

3

Const. amend. XIV, § 1.  Although the Maryland Constitution contains no equal protection clause, "the concept of equal protection is embodied in the due process requirement of Article 24" of the Maryland Declaration of Rights.  *Tyler v. City of College Park*, 415 Md. 475, 499 (2010).

There are three different standards of review that courts use in determining whether a legislative enactment violates the equal protection guarantees of those two constitutional provisions.  The first standard is "[t]he general rule . . . that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985).  Under that standard, which is commonly referred to as the "rational basis" test, a classification will not be overturned "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [governmental] actions were irrational."  *Murphy v. Edmonds*, 325 Md. 342, 355 (1992) (alterations in original) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 471 (1991)).  "A statutory classification reviewed under the rational basis standard of review," explained the Court of Appeals, "enjoys a strong presumption of constitutionality and will be invalidated only if the classification is clearly arbitrary."  *Id.* at 356.

The next, and most demanding, of these standards of review is the "strict scrutiny" test.  It is employed by courts when "a statute creates a distinction based upon clearly

4

'suspect' criteria, or when that enactment infringes upon personal rights or interests deemed to be 'fundamental.'" *Conaway v. Deane*, 401 Md. 219, 272 (2007) (quoting *Att'y Gen. of Md. v. Waldron*, 289 Md. 683, 705–06 (1981)). Such suspect criteria includes, for example, race, national origin, and alienage, *see City of Cleburne,* 473 U.S. at 440 (stating that "when a statute classifies by race, alienage, or national origin," it is "subjected to strict scrutiny"). Under this test, the state must demonstrate that, in creating classifications based on suspect criteria, the statute is "'narrowly tailored' to achieve a 'compelling' government interest." *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 720 (2007).

The third and final standard of review is the intermediate level of review known as "heightened scrutiny." *City of Cleburne*, 473 U.S. at 440–44. It is applied when the statute's classifications under review are based on "quasi-suspect" criteria and requires more scrutiny than the deferential rational basis standard of review but does not involve suspect classes or fundamental rights noted above. *Id.* at 440–41. An intermediate level of scrutiny has been applied, for example, to classifications involving sex (under the federal Constitution),[3]

---

[3]In Maryland, courts will review classifications based on sex under a strict scrutiny standard of review. Md. Decl. of Rts. Art. 46; *State v. Burning Tree Club, Inc.*, 315 Md. 254, 294–96, *cert. denied*, 493 U.S. 816 (1989); *Murphy v. Edmonds*, 325 Md.342, 357 n.7 (1992); *Conway v. Deane*, 401 Md. 219, 276 n.38 (2007). Under the federal constitution, however, the Supreme Court has exercised an intermediate level of scrutiny when reviewing governmental classifications based on sex. *Craig v. Boren*, 429 U.S. 190, 197 (1976); *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982); *United States v. Virginia*, 518 U.S. 515, 532–33 (1996).

*United States v. Virginia*, 518 U.S. 515, 532–33 (1996); illegitimacy, *Clark v. Jeter*, 486 U.S. 456, 461 (1988); the education of children of illegal aliens, *Plyler v. Doe*, 457 U.S. 202, 230 (1982); and the right to practice law by former judges, *Att'y. Gen. of Md. v. Waldron*, 289 Md. 683, 716–728 (1981). To survive heightened scrutiny, the statute "must serve important governmental objectives and must be substantially related to achievement of those objectives." *Murphy*, 325 Md. at 358 (quoting *Craig v. Boren*, 429 U.S. 190, 197 (1976)).

Because the classification at issue in the instant case does not burden a "suspect" or "quasi-suspect" class, nor infringe upon a fundamental right, we shall apply the rational-basis test in determining whether CJP § 5-302(c) violates the Equal Protection Clause or Article 24.

In 1987, Senate Bill 237, known as the "Local Government Tort Claims Act" was enacted into law. 1987 Md. Laws, Ch. 594. One of the principal purposes for the act was to "establish[] a limit on the liability of the local governments of the State." *Id.* A rational basis for imposing such limits on local governments' tortious liability, limits that would not otherwise apply to nonlocal government employers, can be found in the following portion of the summary of the committee report for Senate Bill 237:

> In recent years, local governments have increasingly become targets for liability claims. Senate Bill 237 will address the existing liability crisis for local governments and problems of increasing claims, higher judgments, larger settlements and the availability and affordability of insurance claims. Cities and towns may pay the bill for higher and higher insurance premiums, but it is the taxpayer who is the real victim. The choice for all local governments when presented with huge cost increases is either higher taxes or reduced services.

6

Senate Judicial Proceedings Committee, Summary of Committee Report, 1987 General

Assembly of Maryland, Senate Bill 237, at p. 3.

Moreover, the bill file for Senate Bill 237 contains what is entitled a "Briefing Paper,"

prepared by the Governor's Legislative Office. That document sets forth the reasoning

underlying the statutory bar to actions filed by local government employees against their

co-employees found in CJP § 5-302(c):

> This type of prohibition is common in many jurisdictions and is known as the
> "fellow servant rule." It is sensible to include this provision in the Act since
> the local government would have to pay any judgment rendered against an
> employee in an action brought against that employee by another employee.
> Since Workmen's Compensation provides compensation for injuries regardless
> of fault, limiting recoveries to that provided in the compensation law is
> equitable. This is particularly true in light of the benefits granted to employees
> by the Act.

Briefing Paper H.B. 253/S.B. 237.

Clearly, the limitation imposed on the right of local government employees to "sue

a fellow employee for tortious acts or omissions" by CJP § 5-302(c) is related to the

legitimate governmental purpose of the Local Government Tort Claims Act. It assists local

governments in better predicting future costs and expenses by providing them with some

protection against unanticipated tort judgments stemming from suits between local

government employees. Indeed, without this protection, taxpayers would face, in the words

of the committee report's summary, either "higher taxes or reduced services." Finally,

notwithstanding the statute's limitation on suits between co-employees, injured local

government employees are still entitled to worker's compensation for their injuries. Thus, the protection granted by CJP § 5-302(c) to local governments from having to defend against suits brought by one employee against another is not "clearly arbitrary" and therefore does not violate the Equal Protection Clause.

II.

Blue next contends that CJP § 5-302(c) violates Article 19 of the Maryland Declaration of Rights because it denies a local government employee his right to a remedy for an injury he has suffered as a result of the negligence of a co-employee.

Article 19 of the Maryland Declaration of Rights states: "That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land." Although, Article 19 guarantees access to the courts, "that access is subject to reasonable regulation." *Murphy v. Edmonds,,* 325 Md. 342, 365 (1992). To be more specific, a "statutory restriction upon access to the courts violates Article 19 only if the restriction is unreasonable." *Id.*

In *Rios v. Montgomery County*, 386 Md. 104 (2005), for example, Maryland's highest Court held that the notice provision of the LGTCA that requires a potential claimant to give notice of impending claims against a local government within 180 days of an injury was not an unreasonable restriction to access of the courts and thus did not violate Article 19. *Id.* at 139. The *Rios* Court reasoned that the notice requirement did not restrict a "traditional

8

remedy or access to the courts" because, absent the enactment of the LGTCA, local governments would not be required to defend and indemnify their employees in suits arising out of non-constitutional torts committed during most "governmental" functions. *Id.*

The Court of Appeals also considered an alleged unreasonable restriction on access to the courts in *Murphy v. Edmonds*, 325 Md. 342, 355 (1992). There, the Court held that a state statute that limited only recoverable noneconomic damages[4] did not amount to a restriction upon access to the courts. 325 Md. at 366. "There is a distinction," explained the Court, "between restricting access to the courts and modifying the substantive law to be applied by the courts." *Id.* That is to say, the statute at issue in that case did not impose a restriction on access to the courts, as it did not prohibit a plaintiff from pursuing a negligence claim, but it only limited the amount of noneconomic damages that could be recovered in such an action. *Id.* The Court added that, even if the statute in question were "viewed as some degree of restriction upon access to the courts, it would be an entirely reasonable restriction" because a "cap on noneconomic damages may lead to greater ease in calculating premiums, thus making the market more attractive to insurers, and ultimately may lead to reduced premiums, making insurance more affordable for individuals and organizations performing needed services." *Id.* at 366–70.

---

[4]Md. Code (1973, 1989 Repl. Vol.), § 11-108 of the Courts and Judicial Proceedings Article.

Similarly, CJP § 5-302(c) reasonably restricts, without abolishing, a local government employee's access to the courts. It prevents a local government employee from suing a co-employee when his injury is "compensable under the Maryland Worker's Compensation Act" and the co-employee's acts or omissions were within the scope of his employment, as the injured employee may seek compensation by filing a claim under the Worker's Compensation Act, which Blue has done. Moreover, the statute does not prevent an injured local government employee from suing a co-employee when his fellow employee committed the tort at issue outside the scope of his employment or when the injured local government employee is not eligible for worker's compensation. And, as we have explained, the restriction on access to the courts, under CJP § 5-302(c), is designed to prevent taxpayers from facing higher taxes or reduced governmental services. In light of these goals, the statute's restriction on access to the courts is reasonable and does not violate Article 19.

III.

While conceding that the words, themselves, of CJP § 5-302(c) are "clear and unambiguous," Blue suggests that, in the context of the "larger statutory scheme embodied in" LE § 9-902, they are ambiguous and therefore "the prohibitions of [CJP § 5-302(c)] must be stricken in light of the broader statutory scheme embodied in § 9-902." Unfortunately, he provides neither argument nor authority in support of this position.

Because the Maryland Rules require that an appellate brief include "[a]rgument in support of the party's position on each issue," Md. Rule 8-504(a)(6), we have repeatedly

10

declined to address arguments that are not properly briefed, *see HNS Development, LLC v. People's Counsel for Baltimore Cnty.*, 425 Md. 436, 459 (2012) (listing cases), and we will not do so now.

                                              **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**